JAMES M. HICKS, adm'r, &c. of Catharine Hicks, *appellant*, *vs.* ROBERT T. HICKS and others, *respondents*.

After an instrument has been propounded for proof, before a surrogate, as a will, and rejected by him as null and void, and the party propounding the same has appealed from his decision, and given the bond required by law, it is erroneous for the surrogate to grant an order appointing a particular person administrator; all proceedings before him being stayed by the appeal.

THIS was an appeal from an order of the surrogate of the city and county of New-York. On the 28th of January, 1847, Robert T. Hicks, as the brother of Henrietta Hicks, deceased, applied to the surrogate of New-York for letters of administration upon her estate. A citation was issued to the other next of kin, returnable on the 4th of February, 1847. Catharine Hicks opposed the granting of letters of administration, on the ground that the deceased had left a will, and she propounded the same for proof; and also on the ground that she had appealed from the decree of the surrogate in the matter of proving that will. She requested the surrogate to take proof of the will, but he refused as to that will, at the same time allowing her to prove that a will had been made; meaning (no doubt) any other will. Robert T. Hicks then objected that the will then propounded, had been before propounded to the surrogate, and that he had decided that it was not a valid will; and read the surrogate's decree and the other proceedings thereon. In answer to which Catharine Hicks read her appeal from that decree, and the bond on appeal, and the surrogate's approval thereof. The decree declared the will was rejected, and declared null and void, and that it could not be admitted to probate; and contained no further order or directions. From that decree it was that Catharine Hicks appealed. Notwithstanding the appeal, the surrogate made an order on the 10th of February, 1847, that letters of administration be granted to Robert T. Hicks on his giving a bond with sureties. From that order Catharine Hicks appealed, and gave the bond to stay proceedings. This appeal was the one now before the court.

*W. C. Wetmore* and *C. O'Conor*, for the appellant.

*S. Jones*, for the respondents.

*By the Court*, MITCHELL, J.  The question presented is, whether the surrogate commits an error in granting an order that a particular person be appointed administrator, after an instrument has been propounded for proof before him as a will, and rejected by him as null and void, and the party propounding it appeals from his decision, and gives the bond required by law.

The law allows a stay of proceedings on every order or decree of the surrogate, when it is appealed from and the proper bond is given, and other requirements of the statute are complied with; except when perishable property is to be sold, or the order is for commitment for a contempt, &c., and except also, that testimony may be taken conditionally, if the order is interlocutory.  Even in these last cases, the court may order a stay. (2 *R. S.* 607, § 89.) The revised statutes allow appeals to the circuit judge from the decisions of a surrogate, by which a will shall have been admitted or rejected by him.  (2 *R. S.* 608, § 90,) and to the chancellor from the circuit judge, if the decision is on a question of law.  Appeals from all other orders of the surrogate are to be made to the court of chancery, except appeals from orders as to the admeasurement of dower. (*Id.* 609, § 104.) It is then provided that such appeals from the surrogate for the final settlement of the accounts of executors, &c. shall be made in three months; and from an order appointing or removing a guardian, within six months; and that in all other cases not before specified, and not otherwise limited by law, appeals from the orders of a surrogate to the court of chancery shall be made in thirty days.  Then by sections 108 and 109 it is provided that " no such appeal shall be effectual until a bond be filed with the surrogate, with two sureties to be approved by him, in the penalty of *at least* $100, conditioned that the appellant will prosecute his appeal to effect, and will pay all costs that may be adjudged against him by the court of chancery. And that every such appeal, when perfected, except in the cases

specified in the two next sections, shall suspend all proceedings on the order appealed from, until the appeal be determined, or the appellate court shall authorize proceedings thereon. (§ 109.) The excepted cases are appeals from an order appointing a *collector* or *special* administrator, or directing the sale of perishable property, or appointing appraisers, or directing the service or publication of notices, or directing commitments.

The expression " every such appeal, when perfected, shall suspend all proceedings on the order appealed from," naturally and grammatically includes all appeals from orders of surrogates, previously mentioned in that article ; whether mentioned first in order or last, and whether made to the chancellor or to the circuit judge.    And if it were not so, then so far as this article alone is concerned, the surrogate could proceed and grant letters testamentary when a will had been admitted by him and an appeal had been taken from his order, as much as he could proceed and grant letters of administration when he has rejected the will and an appeal has been taken from that decision.    It is quite as important that proceedings should be stayed, so that an administrator should not get the control of an estate which belongs to the executor and to legatees who may not be the next of kin ; and on the other hand, that the executor and legatees should not get the control of what may belong to the next of kin, as that proceedings should be stayed until the appellate court determine the true state of the accounts of an executor, administrator or guardian, or who is a proper guardian or administrator, or the other various matters as to which an appeal lies.

It is true the bond on appeal is conditioned for paying such costs as the court of chancery may adjudge ; and so does not expressly provide for payment of costs to be awarded by the circuit judge.    But it does provide that the appellant shall prosecute his appeal to effect ; and if the decision of the circuit judge should be against him, the appellant would not have prosecuted his appeal to effect, and so would be liable to the costs that might be awarded against him as damages for this breach of the bond.   As the grammatical construction of this clause would include appeals as to the proof of wills, and the reason

Hicks *v.* Hicks.

for applying the law to such appeals is as great as for applying it to others, it ought to be so construed as to include appeals as to the proof of wills, whether the order of the surrogate rejects or admits the will. It is also true that there is an express provision in another part of the revised statutes, (2 *R. S.* 66, § 55,) allowing an appeal from an order of the surrogate admitting or rejecting a will, and directing that the appeal shall stay the recording of probate of the will; but making no provision for a stay in any other respect. This only shows that the two parts of the revised statutes in part cover the same ground. Thus sections 90 and 98, 2 R. S. 508, are nearly the same in substance as sections 55 and 56 Id. 66. In like manner provision is twice made in the same statutes as to costs in suits against executors; first in 2 R. S. 90, § 41, and then in p. 618, Id. § 38, (37.)

In the case under consideration the last provision may have been made broader on purpose to supply any possible omission in the first.

Another view of this case may also show the surrogate's order to be erroneous. The 2 R. S. 76, § 38, as amended by the act concerning the proof of wills, &c., (*Laws of* 1837, *p.* 528, § 23,) authorizes the surrogate, in his discretion, to issue special letters of administration authorizing the preservation and collection of the goods of the deceased, 1st, in *case of a contest relative to the proof of a will,* or to granting letters testamentary, or with the will annexed, or letters of administration in case of intestacy, or when from any other cause a delay in granting such letters is necessarily produced.

This is a power which must be allowed whenever there is a contest relative to the proof of a will, and as long as the contest lasts. If the will is admitted to probate, and an appeal taken and perfected, then by the express provisions of the 2 R. S. 66, § 55, the surrogate would be stayed from recording or making probate of the will. The will then would be under contest, and if the surrogate could not act under this clause, no person could be appointed to preserve the estate; the executor could not, on account of the stay of proceedings, and no general administrator could be appointed because by the surrogate's decision there

was no intestacy.   This section therefore is not to be confined (as it was contended it should be,) to contests before the surrogate, but extends to any contest, whether before him or an appellate court, " in case of a contest relative to the proof of a will," without any limitation as to the place or duration of the contest. The statute therefore has provided a remedy for a case like this where a will is contested, and has given the means of securing the estate during the contest; it has given a discretion to the surrogate, whether he will appoint a collector or not; but that is a discretion to be exercised only on the question whether a temporary collector is necessary or not.   If none be needed, much less is a general administrator needed; if one be needed the surrogate is to appoint a collector merely, and not a general administrator.   While the will was contested before the surrogate the only administrator that he could appoint would be the special administrator or collector; and there is no reason for allowing him to appoint any person with greater powers after the will had been rejected by him, but his rejection made unavailing by an appeal, and the continuance of the "contest relative to the proof of the will."   In such a case he had no more right to appoint a general administrator, than he could have had before the proofs as to the validity of the will were closed before him.   But he had power in both cases to appoint a special administrator, if in his discretion that should seem proper.   Whether the contest were before him, or before the appellate court, it was uncertain whether the deceased died intestate or not, until the contest should cease, and until that was settled no general administrator could properly be appointed.

If, notwithstanding the appeal be perfected, the surrogate may appoint a general administrator, that administrator may collect all the personal property of the deceased, and distribute it to the next of kin, none of whom may be entitled to any part of it, if the will should be established.   They may be poor or insolvent, and the legatees afterwards be unable to collect any thing from them.   It could not be that the law, which has in almost every other case provided for a stay of proceedings on appeal, has left this case, so important, unprovided for; and it is not

subject to that imputation, if it be so construed that the surrogate may appoint a special administrator, but not a general administrator, in case of a contest relative to the proof of the will, whether that contest be before the surrogate or in an appellate court.

The practice in the ecclesiastical courts and courts of civil law was referred to; but it aids us but little as there is no little doubt what is the precise rule on this subject in those courts. In admiralty cases an appeal from a final sentence suspends the sentence altogether; but then the cause is to be heard in the appellate court *de novo,* as if no sentence had been passed. (*Yeaton* v. *U. S.,* 5 *Cranch.* 281.) "*Nam in appellatione a sententia definitiva licet non allegata allegare & non probata probare.*" This license is not allowed under our statutory appeals.

In the ecclesiastical courts it would seem that there is a distinction as to the effect of an appeal, and that it stays proceedings without an inhibition, after a final sentence, in most causes; but does not operate as a stay, so as to bind the judge *a quo* if the appeal is from an *interlocutory* order, or "in causes of *correction,*" and that this prevention of a stay is not part of the general law, but the result of the 96th and 97th canons. (*Herbert* v. *Herbert,* 2 *Phillim.* 437, 443, 444.) The general rule as it prevailed perhaps before those canons, is stated in a rule to 1 Addams, 21. Appellatio a *definitiva* statim cum fins interposita, legat manus judicis a quo, ut non posset procedere ad aliquem actum ulterius in illa causa. Sed appellatio ab *interlocutora* non legat manus judicis a quo, quia possit procedere ad ulterium donec per judicem appellatisnis fueris inhibitum.

This would seem to indicate that in the courts which are the origin of our surrogates' courts, an appeal from a final order like this would stay all proceedings of the court below, without the necessity of an inhibition from the higher court; and the 96th and 97th canons, above alluded to, seem to have been passed to prevent the abuse of appeals, and to have assumed that formerly they did stay all proceedings. Such also seems to have been the prevailing opinion as to what was the effect of a writ of error,

---
Benjamin *v.* Taylor.
---

before any statute regulated the subject. The revisers say in their notes, vol. 3, (2d ed.) p. 851, "probably the issuing of a writ of error now is a stay of proceedings in all cases." The opinion that a writ of error at common law suspended proceedings on the judgment, in all cases, is expressed by Welles, justice, in 6 *How. Pr. Rep.* 36, and also that an appeal has the same effect, unless the statute require something more to be done to cause a stay. The form of the English statutes, as to bail in error, and of our act of 1801, would indicate that the law was so before they were passed; they are in the negative, that no execution shall be stayed by a writ of error, unless the bail be given; not that execution shall be stayed if bail be given, as would be appropriate if it required a new enactment to make the writ a stay. Those acts too did not extend to all actions, and executors were exempted from their operation. (*See Laws of* 1801.)

The order appealed from should be reversed with costs.

[New-York General Term, December 1, 1851. *Edmonds, Mitchell* and *King*, Justices.]