In the matter of the administration of the estate of SUSAN HILL.

1. An orphans court cannot revoke its decree appointing an administrator while an appeal from such decree is pending. . .

2. In appointing an administrator from several applicants of the same degree of kinship, all else being equal, an older will generally be preferred to a younger and a male to a female.

Appeals from two decrees of the orphans court of Mercer county.

Susan Hill died September 6th, 1896, intestate. She left six children, Charles C., Henry, Elwood, Hamilton, Edward F. and Zillah, now married to Daniel J. Bowers. On September 22d Charles C. applied to the surrogate of Mercer county for letters of administration. His application had the written endorsement of all the children except Zillah, she having on September 21st filed a caveat against the granting of letters to Charles C. The matter was set down for hearing before the orphans court on October 21st, 1896, and after several continuances came on for hearing on November 6th.

On that day Hamilton and Elwood Hill were permitted to withdraw their consents to the appointment of Charles C. Letters were granted to James J. Cahill and John Rellstab, the former being the proctor of Charles C. Hill, and the latter the

Hill's Case.

proctor of the children opposing the granting of letters to Charles C. Hill.

. On November 19th Charles C., through another proctor, filed in the orphans court a notice of appeal, following it with a petition of appeal in this court. This is the first appeal.

On December 3d Messrs. Cahill and Rellstab filed a petition in the orphans court, setting out that when the order appointing them was made they thought that all the next of kin of Susan Hill, including Charles C., were consenting to such appointment; that Charles C. had taken an appeal from the order appointing them, and that they therefore asked to be discharged from their office. On December 14th they were so discharged.

In the meantime, Elwood and Hamilton had presented a petition to the orphans court that Zillah Bowers should be appointed in the place of the administrators who had applied to be discharged. On January 8th, 1897, the court appointed Zillah Bowers and Henry Hill, with the condition that in case either of the parties so appointed should fail to give a bond within ten days, that the one so appointed and should give the bond should proceed with the administration of the estate. From this decree an appeal was taken by Charles C. This is the second appeal.

. Letters were issued by the surrogate to Zillah and her husband, William, although the latter had not been appointed as one of the administrators but only required to enter into bond with his wife in case she qualified.

*Mr. Samuel G. Naar* and *Mr. John T. Bird,* for the appellants.

*Messrs. Buchanan & Rellstab,* for the respondents.

The Vice-Ordinary.

I will first speak of the appeal first taken.

It is of course true that the orphans court could not pass by the next of kin and appoint strangers to the blood of the intestate without the consent of all the next of kin, or without proof that the non-consenting parties were unfitted for the office.

This is conceded by all parties. The court below obviously acted upon the supposition that all the next of kin had consented. No testimony was taken in respect to the fitness of Charles C. Hill for the office. The proctors on both sides undoubtedly supposed that the next of kin, who had all been cited and were present in court, assented to the action of the court. The laudable intention of the court was to commit the administration of the estate to representatives of each of the two opposing classes of relatives, and to commit it to persons who, while representing the two classes, could act together in harmony. Had Charles C. Hill then expressed his dissent to the appointment, the court would not have made the questioned decree.

The query now is whether he can be regarded as consenting to the decree because he was present; if so, he is not in a position in this court to ask for its reversal.

I am of the opinion that under the circumstances such consent should not be imputed to him. He was represented by his lawyer, whom he supposed was insisting upon the right of his client to be the appointee. It does not appear that Charles C. was specially consulted about the compromise appointment. It is not clear, even if he understood the order of the court, that he knew that it was made solely upon the ground of his supposed consent. It would not, therefore, have occurred to him to express his dissent at the time, for he could not have supposed that such dissent would, in the least, have effected a change in the mind of the court. Taking into account that he is a layman, unused to judicial proceedings, and with a lawyer to act for him, it would be unfair, I think, to impute to him a consent to the decree, from the fact that he was present in court at the time the decree was made. No consent therefore appearing, the decree cannot stand.

I now come to the transactions involved in the second appeal. The notice of appeal from the preceding decree was filed November 19th, and the petition of appeal was filed in this court on December 1st. On December 14th the administrators appointed under that decree were discharged, and on June 8th Zillah Bowers was appointed.

In making the order for discharge and the new order for the appointment of Zillah, I think the court was acting without jurisdiction. The constitution confers upon any person aggrieved by a decree of the orphans court the right to appeal to the prerogative court. The nature and effect of an appeal is to be sought for in the civil law whence it came. Appeals, properly so-called, are a continuation of the same case, being only a transfer from one court to another for final trial and judgment. It was a mode of procedure unknown to the common law, and only known in England in the court of chancery and other courts whose mode of proceedings were borrowed from the Roman civil law. *Pow. App. Pro. 104.* From this source came the practice in the ecclesiastical court, which, except as modified by legislation, is the practice of the probate courts in this state. The effect of an appeal is to transfer the cause of action into the appellate tribunal. In respect to the matter appealed from, the transference leaves nothing in the trial court for subsequent action. Says Judge Elliott: "The overwhelming weight of authority is that an appeal, when properly perfected, remits a case wholly and absolutely from the trial court and places it in the higher tribunal. It is difficult to conceive how it could be otherwise, since it is not possible that two courts can have authority over a single case at the same time. * * * The right to order process to enforce the judgment remains in the trial court, where there is no *supersedeas* or order staying proceedings; but all jurisdiction of questions involved in litigation, and embraced by the judgment, terminates with the removal of the cause to the appellate tribunal. The loss of jurisdiction is so complete as to require a party to seek relief from any error, except an error in making the record, or in omitting something from the record, to apply to the higher courts. After the cause leaves the lower court, it cannot act upon any question involved in the appeal." *Ell. App. Pro.* § *541.*

When either party had perfected an appeal from the decision of the probate court, it is erroneous for the probate court to grant an order affecting the rights of the parties as to the subject-matter of the appeal, for the reason that the proceedings

before the probate court are stayed. *Hicks* v. *Hicks, 12 Barb. 322.*

The appellant, who has duly complied with the statutory regulations, deprives the probate court of any power over the subject-matter during the pendency of the appeal. *Green* v. *Clarke, 24 Vt. 136.*

The question remains whether this court will send the record back to the orphans court or will make the appointment of an administrator. It can do either. *Dick. Pro. Ct. Prac. 201, 202.*

The usual practice is to complete the judicial act in this court, as the proceeding is a trial *de novo.*

Inasmuch as, under an order of this court, testimony has been taken to be used here, it is proper that the appointment should be made here as it was in the case of *Read* v. *Drake, 1 Gr. Ch. 78.*

To whom should the appointment be awarded?

Inasmuch as none of the next of kin save Charles C. and Zillah seem to desire the appointment, the choice lies between the two named.

Unless it appears that Charles C. is unfit, I think the appointment should go to him.

While there is no iron-bound rule which absolutely requires the court to appoint one of several next of kin, yet age and sex, all else being equal, has usually controlled the judicial discretion in making the appointment. It is said that, other things being equal, the elder should be preferred to the younger, and a son to a daughter. *2 Redf. Wills 73.*

These are both in favor of Charles C. Zillah is also married. She cannot act without her husband. Vice-Chancellor Van Fleet, in *Cramer* v. *Sharp, 4 Dick. Ch. Rep. 558, 562,* while refusing to express an opinion as to whether a married woman is competent to take a grant of administration, held that if a grant is made to her, it must be in conjunction with her husband.

When the questions arise as to the advisability of the appointment of the widow or a child, the widow will be usually preferred; but if the widow has married again, while it is no invincible objection to her being administratrix, yet that circumstance may induce the court to prefer a child. *2 Redf. Wills 72;*

Hill's Case.

*Webb* v. *Needham 1 Add. Ecc. 494, 498.*   Unless Charles C. is proved to be an unfit person to fill the office he should be appointed.   In my judgment, the circumstances which aroused the suspicion of those opposing his appointment have been satisfactorily explained in the testimony taken in this court.

If this testimony had been before the orphans court, and that court had not been misled by the supposed consent to the first appointment, I think it would not have hesitated to appoint Charles C.

I shall advise a decree reversing the two decrees brought up by the two appeals, and a new decree appointing Charles C. Hill.   He must give a bond in the sum of $20,000.