ARCHIBALD K. KEARNEY *vs.* ALEXANDER S. MACOMB and others.

1. Where the duty of a trustee is a matter of doubt, it is his undoubted right to ask and receive the aid and direction of a court of equity in the execution of his trust.

2. The familiar principle of the common law, that in the creation of an estate by *deed* the word "heirs" is necessary to pass the fee, has not been altered in this state by statute, nor has it been modified or relaxed by judicial construction. No synonym can supply the omission of the word "heirs," nor can the legal construction of the grant be affected by the *intention* of the parties.

3. An instrument conveying lands absolutely, not as security for money, nor to be held in trust for its repayment, but *in lieu of it*, is a deed. No subsequent event can convert it into mortgage.

4. The heir-at-law of the testator, claiming a legacy under the will, and also claiming real estate as heir-at-law against the will, the will being inoperative as to real estate by reason of a defective execution, the heir will not be put to his election, but will take both the legacy and the land. In such case the heir will not be required to give up the legacy, unless the legacy was bequeathed upon an express condition to give up the real estate.

5. A husband and wife by deed of trust, conveyed the legal title to certain real estate to the trustee *for life*, and by the same deed in terms, constituted the trustee attorney irrevocable, in the name of the grantors, or either of them, in conjunction with the grantors, to convey the land.

*Held*, that as respects the wife, the power *as such* was a nullity. She could not convey by letter of attorney.

*Also*, that it can only serve as evidence of an *intention* on the part of the grantors, to confer upon the trustee a power of sale.

*Further*, the trustee has no power of sale under the deed.

By an antenuptial settlement, bearing date on the seventh of April, 1840, executed by and between Susan Kearney, of

the first part; Alexander S. Macomb, her intended husband, of the second part; and Philip Kearney and Archibald K. Kearney, of the third part; the said Susan Kearney conveyed certain personal estate, and her interest in the proceeds of certain real estate, unto the said Philip Kearney and Archibald K. Kearney, their executors, administrators, and assigns, upon the following trusts, *viz.* In trust (1) for the said Susan Kearney until her marriage. (2.) From and after the solemnization of her marriage, during the joint lives of the said Susan and Alexander, to pay the income of the trust fund to the said Susan or her appointee. (3.) Upon his death, if she survived her husband, to pay and transfer the said property to the said Susan. (4.) " And if it shall happen that the said Susan die before the said Alexander S. Macomb, her intended husband, then from and immediately after her decease to hold the said property so vested as aforesaid in the said trustees, in trust to pay, assign, transfer, and set over one equal half part thereof to the said Alexander S. Macomb, her intended husband, for his absolute use, and to pay, assign, transfer, and set over the other equal half part thereof to her father, the said Philip Kearney, his executors, administrators, or assigns, for his and their absolute use."

Philip Kearney, one of the trustees, died on the tenth of April, 1849, leaving the complainant the sole surviving trustee under the settlement.

He left Susan Macomb and Philip Kearney, his only children and heirs-at-law, surviving him. He left a will bearing date on the third of September, 1847, executed in the presence of two witnesses only, and therefore invalid to pass the title to real estate under the law of this state as it then was. The will was admitted to probate in the city of New York, the place of the testator's domicil, on the eleventh of May, 1849. By his will he devised to his son Philip certain real and personal estate in the states of Illinois and Wisconsin, adding, by way of explanation to the devise, this clause : " The above is given to my son as an equivalant to my homestead at Newark, which I had desired to divide

between him and his sister, which he did not wish, but preferred this arrangement." In the closing clause of the will the testator adds : " My affection for my surviving children being equal, my desire has been to divide my estate equally between them."

The said Philip Kearney, in and by his said will, also devised to his executors the Kearney homestead in Newark, in this state, in trust for his daughter Susan, during her life; at her decease, " the use and occupation of the premises to be for the testator's brother Archibald, so long as he lives; at his decease for the benefit of Susan's children, and should her children die without leaving issue, then to the testator's nearest heir."

The will devised a large amount of real estate in New York and elsewhere, to each of the testator's children, and is operative as to all the property devised, except the real estate in New Jersey, which, upon the testator's death, descended to and vested in his two children as tenants in common in fee. Being so seized, Philip Kearney, the son, by deed bearing date on the sixteenth of July, 1850, conveyed and released the undivided half of the homestead property to his sister, Susan Macomb, in fee simple.

Philip Kearney the elder, one of the trustees named in the deed of settlement, appropriated to his own use a portion of the trust fund, without the knowledge or consent of his cotrustee, whereby his estate became largely indebted to the trust. After his death, the said Alexander S. Macomb and Susan his wife, having received from the estate of the said Philip Kearney the amount so appropriated, and being desirous of investing the surviving trustee with property sufficient to make the original trust fund full, and having issue of their marriage two daughters, by deed bearing date on the first day of November, 1850, after the said Susan became seized in severalty of the Kearney homestead, conveyed to Archibald K. Kearney, the surviving trustee, " his legal representatives and assigns forever," nine lots of land in the city of New York, together with the homestead at

Newark, "to have and to hold the same and the proceeds thereof to the said Archibald K. Kearney, his legal representatives and assigns forever, upon the trusts and conditions mentioned and set forth in the said antenuptial contract, in lieu of the sum of $43,633 of the trust funds so appropriated by the said Philip Kearney, as such trustee aforesaid."

The grantors in and by the said deed also constituted the grantee and his representatives their attorney and attorneys irrevocable, with power in the name of the grantors to execute deeds for the said lots, with the usual covenants and warranty to carry into full effect and execution every contract which he or they might enter into for the sale of the said lots, or any of them.

The lots in New York thus conveyed, have been sold by the trustee for about $65,000, so that there remains in the hands of the complainant, as surviving trustee, funds to a much larger amount than were originally conveyed to him and Philip Kearney, in trust, under the antenuptial settlement, and more than the sum intended to be replaced in order to make the original trust fund full.

On the twenty-ninth of April, 1852, Susan Kearney Macomb died intestate, leaving her surviving her husband, the said Alexander S. Macomb, and two daughters, both of whom, at the time of filing the bill, were infants.

The Kearney homestead at Newark has greatly increased in value; large assessments are about to be made upon it for paving, and other improvements. The complainant has filed this bill to obtain the decision of questions which have arisen touching his interest and powers as trustee of the said property, and which the bill alleges it is necessary should be settled, to guide him in the execution of the trusts.

*Parker* and *Keasbey*, for complainant.

*Bradley*, for defendants.

THE CHANCELLOR. Where the duty of a trustee is a matter of doubt, it is his undoubted right to ask and receive the aid and direction of a court of equity in the execution of his trust. The questions submitted in this case for the determination of the court, affect not only the duty of the trustee within the acknowledged limits of the trust, and in regard to the trust estate, but they involve the title of the trustee to the property in question. As the decision therefore seems of necessity to affect the rights of others who are not before the court, I have had some doubt as to the propriety of deciding those questions. But inasmuch as the decision is designed solely for the guidance and protection of the trustee, and as it will conclude the rights of those only who are parties to the proceeding, the points submitted for the opinion of the court will be determined.

1. The deed from Alexander S. Macomb and Susan Kearney his wife to the complainant, as surviving trustee under the marriage settlement of the Kearney homestead, passed an estate for the life of the grantee only, and not the fee simple. The grant is to the said Archibald K. Kearney, "his legal representatives, and assigns for ever." The habendum clause is, "to have and to hold * * to the said Archibald K. Kearney, his legal representatives and assigns for ever." There is no more elementary or familiar principle of the common law, than that in the creation of an estate by deed, the word "heirs" is necessary to make a fee. A grant to a man for ever, or to him and his assigns for ever, vests in him but an estate for life. *Littleton*, § 1; 2 *Bla. Com.* 107–8; 2 *Crabb on Real Prop.*, § 955; *Sheppard's Touch.* 86, 101–2; 2 *Preston on Est.* 11, 12; 4 *Kent's Com.* 5, 6; 1 *Washburn on Real Prop.* 28; 2 *Ibid.* 621.

The cases show clearly that no synonym can supply the omission of the word "heirs," and that the legal construction of the grant cannot be affected by the intention of the parties.

The common law rule has not been altered in this state by statute. Nor has it been modified or relaxed by judicial

VOL. I.                    R

construction. In the recent case of *Traphagen & Adams* v. *Ross*, decided by the Court of Appeals at November Term, 1860, the common law rule of construction was maintained in the learned and elaborate opinion of the Chief Justice, and adopted by the court.

2. The deed to the complainant recites the antenuptial settlement, the death of one of the trustees, the appropriation by him of $43,633 of the trust fund to his use, and the desire on the part of the grantors of investing the surviving trustee with property equal in value to the said sum of $43,633, in order to make the original trust fund full; and it conveys the property to be held " upon *the trusts and conditions* mentioned and set forth in the antenuptial contract, in lieu of the said sum of $43,633 of the trust fund so appriated by the said Philip Kearney, deceased, as such trustee." The terms of the deed admit of no question as to the purposes for which the estate is conveyed. It is to be held upon the trusts and conditions set forth in the antenuptial contract.

3. The terms of .the deed to the complainant are absolute. No proviso or condition is annexed to the grant. None can be implied from the recitals in the conveyance. It is true, the declared desire of the grantors was to invest the surviving trustee with property equal in value to $43,633, in order to make the original trust fund full. But the deed is an absolute grant of the lands conveyed " in lieu of the said sum of $43,633." Not as security for the said money, not to be held in trust for its repayment, but *in lieu of it*. There is no intimation of an intention that in any event, any part of the land conveyed should revert to the grantors. If in its inception it was a deed, no subsequent event could convert it into a mortgage. A mere advance in the value of the land conveyed, beyond the amount of the debt for which it was transferred as a substitute, could not produce that result. What the value of the land conveyed was at the date of the conveyance, does not appear. At that time it might have been of equal value only with the amount in lieu of which it

was conveyed. And even if it was then of greater amount, there are obvious reasons why the grantors should have desired, or at least consented, that the diminution of the trust fund should have been more than replaced. Under the circumstances, the conveyance and the trusts may have been alike injudicious and inexpedient. But the fee was in the grantors. They had a perfect right to dispose of it as they saw fit. *Stat pro ratione voluntas.*

I think there is nothing in the recitals of the conveyance, or in the terms of the grant, to justify the court in treating the conveyance as a mere mortgage, or in ordering the reconveyance of the homestead, upon the ground that the purpose of the conveyance has been answered by the lands already sold.

4. But it is urged that although the will is invalid and inoperative to pass land in this state, yet if the son and daughter of the testator, who are devisees under the will, would avail themselves of other parts of it, they must consent to carry out the devise in regard to this land also. They are put to their election to stand by the will *in omnibus*, or not to claim under it at all. And inasmuch as the land is, by the will of Philip Kearney, devised to his executors in trust for certain purposes in the said will specified, and the heirs-at-law have certain real estate elsewhere devised to them in said will, which they have elected to take, they are bound to permit the title of the Newark property to pass to the trustees for the purposes specified in the will.

The doctrine of election is founded upon the principle that a person shall not be permitted to claim under any instrument, whether it be a deed or will, without giving full effect to it in every respect, so far as such person is concerned. And the ground upon which courts of equity interfere is, that the purposes of substantial justice may be obtained by carrying into full effect the whole intentions of the testator. 1 *Jarman on Wills* 385; 2 *Roper on Leg.* 1567; 2 *Story's Eq. Jur.*, § 1075–7.

Where the devise is valid, but inoperative because the title

is not in the devisor but in the devisee, the application of the principle is clear.

But where the devise is invalid because not a good execution of the power to devise, or because of the infancy of the devisor, or because the will is not duly executed to pass real estate, the heir-at-law may take both the land devised and also the legacy. In *Hearle* v. *Greenbank*, 1 *Vesey, sen.*, 298, Lord Hardwicke said : " The infant is not obliged to make her election, for here the will is void ; and when the obligation arises from the insufficiency of the execution or invalidity of the will, there is no case where the legatee is bound to make an election, for there is no will of the land.   A man devises a legacy out of land to his heir-at-law and the land to another ; the will is not executed according to the statute of frauds for the real estate ; the court will not oblige the heir-at-law, upon accepting the legacy, to give up the land." In such case the heir will not be required to give up the legacy, unless the legacy was bequeathed upon an express condition to give up the real estate. *Boughton* v. *Boughton*, 2 *Vesey, sen.*, 12.

In *Carey* v. *Askew*, cited 8 *Vesey* 492, 497, Lord Kenyon said : " The distinction was settled, and was not to be unsettled, that if a pecuniary legacy was bequeathed by an unattested will, under an express condition to give up a real estate, by that unattested will attempted to be disposed of, such condition being expressed in the body of the will, it was a case of election ; as he could not take the legacy without complying with that express condition.   But Lord Kenyon also took it to be settled as Lord Hardwicke had adjudged, that if there was nothing in the will but a mere devise of real estate, the will was not capable of being read as to that part; and unless, according to an express condition, the legacy was given so that the testator said expressly the legatee should not take unless that condition was complied with, it was not a case of election." The principle was affirmed by Lord Eldon as a long settled doctrine, in *Sheddon* v. *Goodrich*, 8 *Vesey* 482.

The doctrine of these cases is, that the heir-at-law of the testator claiming a legacy under the will, and also claiming real estate as heir-at-law against the will, the will being inoperative as to real estate by reason of a defective execution, the heir will not be put to his election, but will take both the legacy and the land. In such cases " the heir is allowed to disappoint the testator's attempted disposition by claiming the estate in virtue of his title by descent, and at the same time take his legacy on the ground that the want of a due execution precludes all judicial recognition of the fact of the testator having intended to devise freehold estates ; and therefore the will cannot be read as a disposition of such estates for the purpose even of raising a case of election as against the heir." 1 *Jarman on Wills,* (*ed.* 1849) 389 ; 1 *Dev. & Bat. Eq.* 634 ; 4 *Dess. Ch. R.* 274 ; 1 *Lead. Cases in Eq.* (*3d ed.*) 404.

Upon the well settled doctrine of the court of equity, this is not a case in which the heir could be put to his election if all the property affected by the will were within the jurisdiction and under the control of the court. There is no condition annexed to the devise to the heir-at-law, either express, or by necessary implication. It is no will of land in this state. The will is not executed and attested according to our law, and can create no case for election as to lands here, from implication. *Jones* v. *Jones,* 8 *Gill* 197.

If the doctrine of election is at all applicable under the terms of the will, it would seem proper to be applied in the tribunals of those states where the heir shall claim by virtue of the devise. If he claim under the will he may be put to his election, but how shall he be put to his election when he claims as heir-at-law, there being no valid will in existence by which the title to the property can be affected.

Philip Kearney, the elder, died intestate as to his real estate in New Jersey. Upon his death it descended to his children, Philip Kearney and Susan Macomb, as tenants in common in fee. Upon the conveyance and release by Philip Kearney of his interest to his sister, she became seized of

R *

the whole estate in severalty. The deed from Alexander Macomb and wife to the complainant conveyed a life estate only. That estate he holds, according to the express terms of the grant, upon the trusts and conditions of the antenuptial contract, and not upon the trusts contained in the will of Philip Kearney, the elder.

The deed is very peculiar in its structure. It conveys the legal title to the trustee, and then in terms constitutes him the attorney irrevocable of the grantors, in the name of the grantors or either of them, in conjunction with the grantors, to convey the land. As respects the wife, the power as such was a nullity. She could not convey by letter of attorney. *Adm'rs of Earle* v. *Earle, Spencer* 360.

This clause of the deed can only serve as evidence of an intention on the part of the grantors to confer upon the trustee a power of sale. But then the conveyance should be executed in substantial conformity with the power. I incline to the opinion that the trustee has no power of sale under the trust deed. If a sale becomes necessary or expedient for the interests of the *cestui que trusts* or for the protection of the trust property, it would be advisable that the sale should be made under judicial sanction.