Thomas *v.* Thomas et al.

FREDERICK S. THOMAS *vs.* LEMUEL THOMAS and WILLIAM
H. STANFORD,

1. When a decedent leaves a debt due by specialty, and the residuary fund has been exhausted, there being neither lands descended, nor lands charged with debts, the general rule is, that the specific legacies and the land devised must contribute ratably to discharge such debt.

2. But in case the decedent has secured such debt by way of mortgage on any part of the land devised, after the exhaustion of the general residuary fund, the devisee of the mortgaged land cannot call for contribution, either on the general or specific legatees.

3. A right given by will to occupy, at a specified rent, certain premises as long as the devisee may desire to occupy the same as a drug store, amounts to an estate for life.

4. Such tenant is bound to keep down the interest of the encumbrances on the property, but he cannot be compelled, as between himself and the remainder man, to pay off any part of the principal.

*Mr. A. P. Condit,* for complainant.

*Mr. W. S. Whitehead,* for Lemuel Thomas.

*Mr. T. Runyon,* for William H. Stanford.

BEASLEY, C. J., sitting as Master.

The only controversy in this case is that which has arisen between the defendants, and it is one in which the complainant has no interest. It appears upon the answers which have been filed, and, although it is thus presented in a form somewhat irregular, an opinion will be expressed on the points which have been argued, as by this course the necessity of further litigation may be avoided.

The object of the suit is to foreclose a mortgage. Luther S. Thomas, who was the mortgagor, by his will, devised the mortgaged premises to the defendant, Lemuel Thomas, on condition that he would permit the other defendant, William H. Stanford, to carry on the business of a druggist, in a cer-

tain part of the premises then occupied by him, so long as he might desire to use it for that purpose, at an annual rent, not to exceed one hundred dollars, it being expressly provided, that this privilege should be personal, and should not extend to his representatives or assigns. The testator then bequeathed to Mr. Stanford, the stock and fixtures in the drug store above mentioned, and also all money standing to his credit in the Mechanics Bank at Newark, on condition that he should pay all the testator's debts, for which he was liable on account of said stock in the business of said store. By subsequent clauses, divers specific legacies are given to various persons, and the residue of the estate, to one of the brothers of the testator.

The questions discussed before me, relate to the proper mode of marshaling the assets of the estate according to equitable rules, in view of these testamentary dispositions.

It was insisted by the counsel of Lemuel Thomas, who is the devisee of the fee in the mortgaged premises, that the residuary estate, in the first place, must be applied in payment of the mortgage debt; and that, as that will not be sufficient, the specific legatees must contribute, *pro rata*, with the mortgaged property, to discharge the residue of such debt. The argument urged in support of this position was, that the bond and mortgage in question had been given by the testator himself, and that, consequently, this represented a debt due from him by specialty; and that it was the well settled rule, that in such cases, upon the exhaustion of the residuary fund, and the pecuniary legacies, the specific legacies and the land devised, when there is neither land charged with debts, nor land descended, must bear the burden in the ratio of their respective values. In support of this proposition various authorities were cited, which fully sustain it.

But the rule thus contended for and established, does not apply in the present instance. There is a circumstance in this case which did not exist in those recorded in the authorities referred to. They belonged to the class of cases in which the debt secured by specialty, had not been imposed by the

testator himself, on any part of his estate, and under such conditions, undoubtedly, the rule above propounded obtains. But where there is a specific lien on the real estate devised, as in the case now before me, a different principle of distribution is introduced. If this debt of the testator existed in the shape of a bond, it would have been no lien on any part of the estate; but if the holder of such specialty had proceeded to enforce his claim, after the exhaustion of the personal assets, which would, of course, be the primary fund, and had proceeded to raise the residue out of the real estate, in such case, a clear right in equity would have supervened in the devisee, to call upon the specific legatees for a ratable contribution.

In such an attitude of rival interests, according to the established gradation of liability, the appropriation would be, first, the residuary fund; next, general pecuniary legacies; and then, *pari passu*, specific legacies and devised lands. This was the order of contribution recognized and acted upon in the case of *Shreve* v. *Shreve*, decided in the Court of Appeals of this state, in the Term of June, 1864. But the distinction is between the mere general right of the holder of a specialty debt to levy it at his pleasure on the real or personal estate, and the lien growing out of such debt, imposed by the testator himself upon the land. In such event, the doctrine has been long established that, after the application of the general residue of the estate, the land thus encumbered must solely bear the burden. By force of such a testamentary disposition, the devisee of the encumbered land cannot disappoint either the specific or general legatees.

The early decisions in which this rule is propounded and applied, are those of *Lutkins* v. *Leigh, cases tempore Talbot* 53, and *Forrester* v. *Leigh, Ambler* 171. And in more modern times, the rule has often been received as of unquestionable obligation, both by text writers and in judicial opinions. 2 *Roper on Leg.* 957; 2 *Williams on Ex'rs* 1453; 2 *Jarman on Wills* 428, and the cases cited.

In the case in hand therefore, in my opinion, that part of

the estate of the testator which is comprehended in the residuary clause of the will, must be first taken and applied to the payment of the debts, including the claim of the complainant, and the residue of such claim must be paid out of the mortgaged property. For the payment of this debt, the specific legatees cannot be called upon to contribute.

The counsel of the defendant, Lemuel Thomas, further insisted, on the argument, that the interest of Mr. Stanford in the mortgaged land must be held liable, proportionably, for payment of the complainant's demand.

There appears to be no room for doubt on this point. The will gives this defendant the right to enjoy a part of the mortgaged property, paying a rent the maximum of which is designated, as long as he may desire to use it as a drug store. This gives Mr. Stanford a freehold interest in the premises; his estate is deemed, in law, one for life. 1 *Washb. on Real Prop.* 88. One of the incidents of such an estate is, that the tenant must keep down the interest of the encumbrances on the property enjoyed by him, but he is not forced, as between himself and the reversioner or remainderman, to pay off the principal of any moneys charged upon it. And it is also equally clear, that if he is obliged to take up, or his estate is taken to pay off, the principal of such an encumbrance, he will become a creditor of the estate for the amount so paid, deducting the value of the interest he would have to pay during his life. See the rule as stated by Judge Story, 1 *Eq. Jur.*, § 487.

But this and the other question discussed are aside from the purpose of this suit. The proper parties are not before the court to authorize the marshaling of the assets.

The only decree, therefore, which can be rendered, is the ordinary one for the foreclosure and sale of the mortgaged property; and I shall consequently advise the Chancellor to make that decree.