THE ATTORNEY GENERAL, ex rel. BAILEY, *vs.* MOORE'S EXECUTORS.

N. M., by his will, gave to his executors, in trust, as follows : " With the balance of my estate which may remain after executing the foregoing trusts, to establish, as soon as may be practicable after my decease, in what is now known as the fifth ward of said city of Newark, an orphan asylum, to be called St. James Roman Catholic Orphan Asylum, and also a hospital for sick and infirm persons. And my executors, or the survivor of them, shall, as soon as may be practicable after the institutions shall have been established, cause them to be incorporated, one corporation for both institutions, and shall convey to the corporation, when created, all the property belonging by assignment or appropriation of said executors, or the survivor of them, to the institutions. In the meantime and until such incorporation, such executors, or the survivor of them, shall have the management of the institution : "

*Held,* that the right to establish these institutions for the purpose specified is in the executors. They are not bound to put them under the direction of the Roman Catholic Church, or its bishop, or prelates ; or to cause the worship of that church to be adopted, or its tenets to be taught exclusively, or at all, except as their own judgment impels them.

*Mr. C. Parker,* for relator

*Mr. Bradley,* for defendants.

THE CHANCELLOR.

The hearing in this case is upon bill and answer. Nicholas Moore, of the city of Newark, by his will, dated March 29th, 1865, gave to the defendants, the executors thereof, the bulk of his estate for certain specific objects; one of which, being the sixth and last, is designated in these words:

"Sixth. With the balance of my estate which may remain after executing the foregoing trusts, to establish, as soon as may be practicable after my decease, in what is now known as the fifth ward of said city of Newark, an orphan asylum, to be called St. James Roman Catholic Orphan Asylum, and also a hospital for sick and infirm persons. And my executors, or the survivor of them, shall, as soon as may be practicable after the institutions shall have been established, cause them to be incorporated, one corporation for both institutions, and shall convey to the corporation when created, all the property belonging by assignment or appropriation of said executors, or the survivor of them, to the institutions. In the meantime, and until such incorporation, such executors, or the survivor of them, shall have the management of the institution."

The testator belonged to St. James Roman Catholic Church, in Newark, of which the defendant, John M. Jervais, was pastor. And in the clause appointing the executors Jervais is so described. Theodore Runyon, the other executor, is there described as mayor of the city of Newark, which office he then filled.

The executors design to perform the trust imposed by the above recited clause of the will, by establishing an orphan asylum and hospital, not under the control of the Roman Catholic Church, or of the bishop of the diocese of that church, in which they will be located.

The information is on the relation of the Right Reverend James Roosevelt Bailey, the bishop of that diocese. He claims that it was the intention of the testator to place the orphan asylum and hospital under the exclusive control and manage-

ment of the Roman Catholic Church; that the trustees should be members of that church, and that they should be subject to the right of visitation, for spiritual purposes, of the bishop and clergy of that church; and that its doctrines and tenets should be taught, and its forms of worship observed in these institutions.

The prayer of the bill is, that the defendant may be compelled to establish these institutions upon such principles, and may be required to adopt and procure a charter designed by the relator for the purpose of carrying them out, a copy of which is annexed to the bill.

The main question in the case is, was it the intention of the testator, in founding these institutions, to make them denominational, and to place them under the control of the Roman Catholic Church, of which he was a member?

There is nothing in the clause of the will above recited that bears upon this question, except the name of the orphan asylum. He directs that it shall be called "St. James Roman Catholic Orphan Asylum."

It does not seem to me that the mere name is sufficient to give character or control of the institution. The direction is to establish "an orphan asylum," to be called by that name. If he had entertained the intention contended for, the most natural way to have expressed it was to direct the establishment of a "Roman Catholic Orphan Asylum," to be called by that name. It seems to me that this would naturally, if not unavoidably, have suggested itself to him, or the draftsman of the will, in casting about for words to express that intention.

No one would suppose that naming a charity after an individual, or society, or a church, would give the individual, or body whose name was used, the control of the charity. Directing a charity to be named the McClellan Hospital, the Lincoln Home, or the Farragut Snug Harbor, would not give to the person whose name was thus used the visitation or control of it. The testator directed this asylum to be named after his own church, St. James Roman Catholic

Church, most probably to show his respect for, and his attachment to, that church and its pastor. And if the right to control is to be inferred from the name, it should be given to St. James church and its pastor.

Nor do the other provisions of the will, or the circumstances of the testator, change the construction of this clause so as to give it a different signification from the plain meaning of the words.

He first directs his debts to be paid, and seven hundred dollars to be appropriated for his funeral expenses, and the benefit of his soul and the soul of his deceased wife. The residue of his estate is given to his executors in trust as follows : first, secondly, and thirdly, to pay three small legacies, amounting to five hundred dollars ; fourth, to expend one thousand dollars for an altar, and six hundred dollars for two windows in St. James Roman Catholic Church ; fifth, to pay to St. Mary's Orphan Asylum, in Newark, four hundred dollars ; and then follows the sixth, the clause above set forth.

The fact that after making these bequests, some for purely religious and denominational purposes, and so expressly restricted, he directed these institutions to be established by his executors, shows that he did not mean so to restrict them.

This conclusion is strengthened by the fact that one of the executors named to fulfill this trust was a protestant, and was described by the office which he held, mayor or chief magistrate of the city where the institution was to be located. That the testator was a decided catholic, and made large bequests to the church of which he was a member, must, under these circumstances, weigh against the construction of the relator. He would not, if his object was to place these institutions under Roman Catholic control, have directed their establishment by a known protestant, who, as survivor, might have had the entire direction of their future character.

In my view, the right to establish these institutions for the purpose specified in the will, is in the executors. They and they alone can control the matter. They are not bound

to place them under the direction of the Roman Catholic Church, or its bishop, or prelates; or to cause the worship of that church to be adopted, or its tenets to be taught exclusively, or at all, except so far as their own judgment impels them.

As no relief can be given here, the bill must be dismissed.*

