In the matter of the guardianship of JEREMIAH N. ALEXANDER, JR., et al., infants.

[Submitted July 10th, 1911.    Decided November 20th, 1911.]

1. The orphans court cannot assume jurisdiction unless conferred by statute.

2. The orphans court has no power, in the absence of statutory authority, to direct in advance a guardian to expend the income of his ward's estate, or how he shall expend it; but the guardian must expend the same according to his best judgment and rely on the court to allow his account.

3. *P. L. 1901 p. 325*, allowing the orphans court in specified instances to order the use of the principal of the personal estate, or a part thereof, as it may deem for the best interests of infants, does not authorize the orphans court to direct the expenditure of the income of an infant's estate.

4. The guardian of infant children of parents having an income of less than $1,200 a year may use the income of the estate of the children for their education along lines for which they show a special aptitude.

On appeal from the prerogative court.

*Mr. Joshua E. Horton,* for the appellants.

PER CURIAM.

The parents of Jeremiah N. Alexander, Jr., and Mary B. Alexander, infants, residents of the county of Camden, filed their petition in the orphans court of that county praying that the guardian of their two children might be directed to pay to them for the education and maintenance of their children, the income produced from funds held by the guardian in trust for the children. Upon the hearing of the application the prayer of the petition was denied. Thereupon the parents appealed to the prerogative court, and that court affirmed the order of the orphans court. Appeal was thereupon taken to this court.

For the reasons set out in the opinion of Judge Joline, filed in the orphans court, we conclude that the order of the prerogative court, affirming that made by the orphans court, should,

in its turn, be affirmed. The opinion of the orphans court which is hereto annexed is adopted by us as expressing the view which we entertain.

"JOLINE, J. The petition in this case sets out that Jeremiah N. Alexander and Anna B. Alexander are the father and mother of Jeremiah N. Alexander, Jr., an infant aged sixteen years, and Mary B. Alexander, an infant aged thirteen years. That the mother is possessed of certain property worth about six thousand dollars, upon which there is a mortgage of five hundred dollars; that she has no other outside funds or income and business or means of making any money, and that the father has an annual salary of twelve hundred dollars.

"It further sets out, that upon the death of a relative their son, named above, received a legacy of one thousand dollars, and their daughter received a legacy of four thousand dollars; that on the fourteenth day of January, nineteen hundred and ten, letters of guardianship were granted by the Surrogate of the County of Camden to the Security Trust Company of Camden; that on the twenty-sixth day of January, nineteen hundred and ten, said company received the money due said infants, and on the said last-named day invested the same in mortgages.

"It further sets out, that the said Jeremiah N. Alexander, Jr., is attending the Penn Charter School in Philadelphia; that the said Mary B. Alexander is attending the public school in Haddonfield; that she has special taste and aptitude for music; that their parents are anxious to give her a musical education, and anxious to educate as best they can their son; that they are unable, financially, to give said children the education they think and believe they should have, and believe it would be for the best interest of said infants to have the income of said moneys used during their minority for the purpose of properly educating and properly clothing them.

"The prayer of the petitioners is that the Security Trust Company pay the income from said moneys to them, said parents, for the purposes aforesaid.

"Upon the hearing it was developed that the son lived in Haddonfield, New Jersey; that he was being sent to the Drexel In-

stitute, Philadelphia, at a cost of one hundred dollars a year, besides the cost of the trip from Haddonfield to Philadelphia, and that the mortgages drew five per cent. interest. In all else the material allegations of the petition were fully sustained.

"From the time of its creation it has been held that the orphans court was the creature of statute, and that it cannot assume jurisdiction of any matter unless it is given by statute. In the case of *Gray* v. *Fox, 1 N. J. Eq.* (*Saxt.*) *259, 272,* it was held that 'the decree of the orphans court, on a matter over which it has jurisdiction, if fairly obtained, is certainly not to be questioned in a collateral way, even in this court.' (Chancery.) 'But that court is one of limited power and jurisdiction; if it transcends its jurisdiction, its acts will pass for nothing.' *Sherman* v. *Lanier, 39 N. J. Eq.* (*12 Stew.*) *249, 258.* In *Dunham* v. *Marsh, 52 N. J. Eq.* (*7 Dick.*) *256, 261,* it was held that once having obtained jurisdiction, it follows 'as an incident in the exercise of that power that it has power to solve any question which must necessarily be decided in reaching that end.' *Mullaney* v. *Mullaney, 65 N. J. Eq.* (*20 Dick.*) *384, 386; Baker's Case, 61 N. J. Eq.* (*16 Dick.*) *592; 2 N. J. Dig. 2907 § 72a; F. Godfrey's Case, 72 N. J. Eq.* (*2 Buch.*) *354; Woolsey* v. *Woolsey, 72 N. J. Eq.* (*2 Buch.*) *900; McSpirit Estate, 73 N. J. Eq.* (*3 Buch.*) *616; Lippincott's Case, 68 N. J. Eq.* (*2 Robb.*) *581.*

"The question then naturally occurs, has any statute conferred upon the orphans court power to direct in advance a guardian to expend the income of his ward or how to expend it? I have failed to find any statute of this character, and none has been presented to me by counsel. I conclude, therefore, that in so far as the orphans court is concerned, it must be expended as the best judgment of the guardian dictates, and that he must rely upon the court to allow it in his account.

"The power to do that which is asked of this court is inherent in the court of chancery, if anywhere. *Alling* v. *Alling, 52 N. J. Eq.* (*7 Dick.*) *92. In re Hannah Barry, 61 N. J. Eq.* (*16 Dick.*) *140,* the court holds that 'the general policy of the statute and decisions in this state upon the question now presented has been to leave the question of the necessity of the expenditure of the

personal estate, both income and principal, to the judgment of the guardian, in the first instance, subject to affirmance of the orphans court on the settlement of his accounts, and in all ordinary cases this course (which has been followed for over a century) affords protection both to the guardian and the infant.' This case was decided in nineteen hundred, and the legislature, in nineteen hundred and one, passed an act allowing the orphans court in certain instances to make an order authorizing the use of the principal of the personal estate, or a part thereof, as it may deem for the best interest of said minors. *P. L. 1901 p. 325.* Said act did not authorize the court to direct the expenditure of the income.

"I have been unable to find that this court has the power or authority to make an order directing a guardian how he shall expend the income of his ward, or to direct him to expend at all.

"My conclusion, therefore, is that the prayer of the petition be denied. It may not be amiss at this juncture to make a few observations. In so far as the boy is concerned, the prayer is that the income may be used for his education, and as to the girl, that it may be used for her musical education, for which she has shown a singular aptitude. The mother owns a property worth six thousand dollars, upon which there is a mortgage of five hundred dollars, and has no income. The father has an income of twelve hundred dollars a year. Taking therefrom thirty dollars, the interest on the mortgage, there is left eleven hundred and seventy dollars with which to feed and clothe his family and educate his children, plainly an inadequate sum.

"In *Streitwolf* v. *Streitwolf, 58 N. J. Eq. (13 Dick.) 576,* the court, in speaking of the duty of a parent, says: 'The necessity that is the criterion of validity is not mere physical necessity, but rather social and moral propriety, having regard to the situation of the parties and the fitness of things. Food, shelter and clothing are physical necessities. In an enlightened community, the common education of a child is a moral and social necessity. Professional training is not a general necessity, but is a special advantage.'

"These remarks are as applicable to guardians as to parents, and the guardian in this case, I think, can safely pay out the

income due the young man on account of his education, and just as safely pay the income due the young girl, or a part of it, upon her musical education. If she does not in the future exhibit this special aptitude for music the expenditure can cease. It is within the power of the guardian to see the income is applied to such education, and I may add, to her clothing. No doubt her parents feel that the development of her latent powers will fit her to earn a livelihood in the future, and surely a court, · in the light of the above decision, would not surcharge a guardian with money expended for such a laudable purpose."

The order of the prerogative court is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE—12.