On March 5th, 1925, the complainant executed an agreement whereby it gave to the defendant the exclusive right to sell and distribute all devices called oil burners (to be manufactured under certain patents and applications for patents which had theretofore been assigned to the complainant by a man named Grant), within the United States of America, except the State of New Jersey. On February 23d 1927, the complainant filed this bill, which was subsequently amended on May 20th, 1927.
The arrangement between the parties was modified in October, 1925, so that the complainant made an actual assignment of all patents and applications for patents under which such oil burners were to be manufactured, and the defendant agreed to pay a royalty of $17.50 for each such oil burner to be manufactured and sold by the defendant. It is charged that the defendant has been manufacturing and selling these oil burners since shortly after the execution of the agreement of March, 1925. The bill prays an accounting and a decree for the amount shown to be due thereby from the defendant to the complainant.
To this bill an answer was filed, denying that the defendant has ever manufactured or sold any oil burners under any of the patents or patent applications which it took from the *Page 343 
complainant. In addition, it has filed answers to interrogatories served under the eighty-fourth rule of this court, in which it has made a similar denial.
Acting upon the allegations in this answer and the answers to interrogatories, the complainant filed another original bill on November 17th, 1927, in which it set up the denials aforesaid and also set out at length paragraph 10 of the agreement of March, 1925, the pertinent portion of which provides that if the defendant should not commence to manufacture under the patents and applications mentioned above within twenty-four months from the date of the agreement, all its rights in and to the patents and applications should terminate. This second bill then charged that if the answers to the interrogatories and the answer to the earlier bill were true that the complainant would be entitled to recover back from the defendant all of the latter's rights under the agreement of March 5th, 1925, and the assignment. That the only consideration for the assignment was the agreement of March 5th, 1925, and further alleged that the patents and applications were extremely valuable to the complainant. The bill prayed that the defendant might be decreed to reassign the said patents and applications, and that it be enjoined from selling, assigning, transferring or encumbering any of said patents or applications.
Upon the filing of this second bill, an order was allowed, calling upon the defendant to show cause why an injunction should not issue, in accordance with the prayer of the bill. Upon the return of that order, counsel for the respective parties appeared, and counsel for the defendant admitted in open court that it had, in truth, never made use of any of the above-mentioned patents or applications, whereupon a decree was entered directing the defendant to execute assignments for a patent and certain applications for patents named in the decree and an adjudication that the defendant had no further right, title or interest in or to such patent or applications.
Upon this cause coming on for final hearing, counsel for the defendant, in limine, moved to dismiss the bill because *Page 344 
the underlying issue is the decision of the question whether or not the defendant has ever manufactured under any of the complainant's patent or applications, and that this question has been determined forever by the above-mentioned decree, and that the complainant is precluded from ever raising it again. There can be no question that, as the record now stands, the complainant is barred. It has been uniformly adjudged that a fact or question which was in issue in a former suit and was there judicially determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein so far as concerns the parties to that action and persons in privity with them and cannot be again litigated by the same parties or privies, either in the same court or any other court of competent jurisdiction, whether it be upon the same cause of action or another. 34 C.J. 868. This seems to have been the law ever since the Duchess of Kingston's Case, 2 Sm. Lead. Cas. (7thAm. Ed.) 1921. In fact, it is not denied by complainant's counsel.
On the complainant's behalf, however, it is now prayed that the decree in the second case be opened so as to permit the case at bar to be heard and decided on its merits. To this, objection is made on the ground that complainant has been quiescent over a period of nearly fourteen months since the decree was entered.
There can be no doubt that the complainant's present application is directed to the sound, legal discretion of the court. Smith v. Livesey, 67 N.J. Law 269. And it is equally clear that the right to have a judgment opened or vacated does not belong alone to the apparently unsuccessful party thereto.Dedrick v. Charrier, 15 N.D. 515, in 125 A.S.R. 608, and see cases collected in note 85 in 34 C.J. 347. In every such motion, whether addressed to a court of law or one of equity, it calls forth the inherent equity powers of the judge thereof.
It would appear that the complainant's motion now under consideration should be granted for the following reasons: If the defendant has truthfully pleaded that it never has manufactured under the complainant's patents and applications, *Page 345 
it has nothing to fear. It is true that it will be subjected to the expense and annoyance of defending this litigation, but that, of course, is an incident to be borne by every successful litigant. On the other hand, if it has, in fact, profited by the license or assignment it received from the complainant in 1925 and is liable for a considerable sum of money due the complainant for royalties, the lot of the complainant will be a harsh one, and the only method by which the truth of this issue can be determined is a final hearing upon the merits. It would seem the part of common sense and substantial justice that a highly necessary, but, nevertheless, technical rule of law should be relaxed or disregarded where it is within the discretion of the court to do so and where to do so may prevent irreparable injury, and to refuse may subject one to an extinguishment of a just claim forever.
In the next place, it appears in the record that a man named Grant is the real party in interest behind the form of the corporation that appears as complainant. He is the inventor of the oil burner described in the above-mentioned patents and applications and is very heavily interested in the welfare of the complainant. In fact his only hope of enjoying any of the fruits of his discoveries lies in the returns to that company. Now, of course, no court has ever declared inventors, as a class, to be incompetent, so far as I know. It is notorious, however, among men of any experience that they are utterly lacking in business judgment, with very rare exceptions. They are as unable to protect themselves in business transactions as sailors. They are almost universally without financial means and thus are driven to depend upon others for the money necessary to protect and market the creations of their minds. Their necessities, as shown by common experience, drives them into the hands of classes of men who are possessed of wide business experience and with the means to employ the most astute and talented advisers.
With these considerations in mind, is it a fantastic thing to say that while inventors are sui juris, yet a court of equity ought to exercise extreme diligence in investigating disputes between them and promoters of their patents? It seems to *Page 346 
me that it is a well-founded reproach to equity jurisprudence that our records are filled with cases where the offspring of the minds of these creative but impractical men have been kidnapped by designing men who have fattened upon the advantage that they possess in their dealings with the former. It appears to me that the situation as between these two classes of men is analogous to the basic idea which controls this court in examining into those transactions, for example, whereby a mortgagor undertakes to surrender his equity of redemption in favor of the mortgagee. Professor Pomeroy deals with the subject in his work on 3 Eq.Jur. (4th ed.) § 1193, and points out that the doctrine is universal in its application and underlies many special rules of equity. What is there that gives more power to a creditor over his debtor than reposes in the hands of a promoter to whom a needy inventor is driven for assistance? He brings with him a commodity for which he feels a parental love. His entire future and success in life appear to him to be involved in the transaction. He is in a poor position to demand his legal rights.
The defendant says that the dictates of justice demand that the court shall leave the complainant where it finds it, because of the long delay intervening after the entry of the decree in the other suit. I think not. The plea of laches, to be successful, must disclose one or the other of two things: First, that the delay has lasted over the period fixed by the statute of limitations; or, second, it must be shown to have changed the position of the one who advances it, so that unless it operates as a bar an injustice will be rendered. It is not pretended that the first section of this rule has been satisfied.
The defendant attempts to bring itself within the second subdivision by showing that prior to the entry of the decree in question, it was negotiating with a large corporation for an advantageous sale of a controlling fraction of its capital stock and that the rendition of the decree in the other suit had, or may have had, more or less to do with the termination of the negotiations by this third party. Disregarding the flight into the realm of speculation and assuming that the *Page 347 
decree was the proximate cause of the other party's withdrawal from the negotiations, it should not avail the defendant anything. The agreement of March 5th, 1925, which sets a time limit of twenty-four months within which the defendant was obliged to begin manufacture or lose the benefit thereof, was executed almost three years before the making of the decree. If the defendant intends to plead publication of the non-user as of the date its original answer was filed in this suit, then even that date was more than twenty-four months after the execution of the said agreement. So that, on its own showing, as solemnly averred in its pleading in this case, it had already forfeited its rights under the patents and applications of the complainant at the time it says it was forced by the complainant's filing of this bill to disclose that it did not include among its assets one of the items upon which it had originally bargained, in part, with the third party.
The next question to be decided is, whether or not there is any power in this court to relieve the complainant of the consequences of its decree. The court of errors and appeals has laid down the rule that all power in this court over its orders and decrees ceases upon the expiration of the time fixed for the taking of an appeal. Watkinson v. Watkinson, 68 N.J. Eq. 632.
This case has repeatedly been cited with approval and followed until as recently as the decision by the court of errors and appeals in Nash v. Leiderman Nash Building Co., 103 N.J. Eq. 287.
Our statute limits the right of appeal to a period of three months from an interlocutory order and one year from the making of a decree. 1 Comp. Stat. p. 450. This rule is so firmly established in the ordinary case where an attempt is made to open, modify or amend a decree upon the part of the party against whom the decree is made that I have recently been obliged to refuse any relief because of it to parties whose position is much more wretched than that of the complainant's or the inventor if they are not successful in the case at bar. That rule is an exceedingly necessary one in the case of an unsuccessful litigant attempting to avoid the consequence of the decree which has been made against him. Otherwise, chaos would reign. No man *Page 348 
could ever have any fair assurance of his property or rights. The pronouncing of judgments would become a mockery. I have been able to find no instance where this rule has been involved where he in whose favor a judgment has been entered has sought to change it. I see no reason why the rule should ordinarily be relaxed under such a condition. It seems to me that the orderly conduct of the business of our citizens would be quite as much deranged. However, there is no reason to definitely pass upon this question because of what is about to be said.
Like all rules, and especially in this court, the one under consideration is subject to exceptions. One is in the case of newly-discovered evidence. And another is where there is some special equity in favor of him who seeks to secure relief from the consequences of a judgment or decree. Judge Vroom dealt with these exceptions in the Watkinson Case, supra (at p. 642), and Mr. Justice Parker, in Mitchell v. Mitchell, 97 N.J. Eq. 298
(at p. 300).
It will be recalled that while the complainant maintains that the defendant is accountable for royalties because it has manufactured under the complainant's patents and applications, the defendant has specifically and unequivocally denied any such user in its answer in the case at bar. Either the defendant is telling the truth, in which event it has nothing to fear, or it has pleaded untruthfully, as a result of which the complainant has become bound by the decree in the other case. Had there been no such defense pleaded, there would be no decree here with which to deal. In fact, the other suit would not have been commenced. There is but one way to determine where the truth lies and that is to permit a final hearing in the case sub judice. If it then be determined that the defendant's answer is an untrue one, the result will be to show that the defendant's present position of helplessness was brought about by the fraud of the defendant. It makes no difference in that event whether the defendant consciously misstated the fact or whether it was an innocent mistake. That, of course, is the classical distinction between fraud against which a court of law will relieve and that which is cognizable in a court of equity. *Page 349 
Therefore, the application to dismiss the bill will be taken under consideration, the final hearing will be conducted on the merits as disclosed by the bill and answer, and the decision of the motion to dismiss, as well as the application to reopen or vacate the decree in the second suit, will likewise abide the result of the final hearing. In this way everything may be held in status quo and the court will eventually be in a position to deal with the parties and the issues as it may then be proved it should act.
Notice should be given of the fixing of the terms of the necessary order.