Isaac Roth, the testator, died in 1927, leaving a will of which the executors were his brothers Jacob and Moses, and his sister Mrs. Sameth. To them he gave his residuary estate in trust to pay the net income to Mrs. Sameth during her lifetime. While he left a large estate, most of the assets that were readily convertible into cash were used to pay debts, administration expenses, and legacies. The major part of the trust estate is a half interest in land which the testator had owned in common with his brother Jacob. The property was, and still is, heavily mortgaged. Ever since testator's death, the mortgagees have required amortization and since the trustees had no capital funds with which the estate's share of the payments could be made, the rents were used for this purpose. In 1944, Mrs. Sameth began pressing her brother Moses — Jacob had died some years earlier — to restore to income and pay her the amounts which had been diverted to amortization. But he did not deem it safe to do so, inasmuch as three successive accounts of the trustees in which the amortization payments were charged against income, had been approved by decree of the Orphans Court. Mrs. Sameth thereupon filed in the Orphans Court a petition praying that the decrees allowing the accounts be opened on the ground of mistake, and the accounts be resettled. When the matter came on to be heard, no testimony or other proofs were received and an order was made dismissing the petition, without the court stating any reasons for the action. From the order, Mrs. Sameth appeals.
Mrs. Sameth's petition to the Orphans Court and the order to show cause made thereon, name only her co-trustee as respondent, although the trustees have no real concern in the matter one way or another, as the petition does not seek to increase their liability. What the petitioner seeks to accomplish is the transfer of a certain sum from corpus to income. The only persons who have an opposing interest are the remaindermen, and they were not made parties to the petition and were given no opportunity to be heard.
While the remaindermen were not joined in the proceeding to open the decrees, they had been parties in the accountings *Page 590 
in which the decrees were made. The doctrine is universally accepted that the judgment of a competent court, acting within its jurisdiction, is conclusive upon the parties as to all matters adjudged, upon which the parties were, of right, entitled to be heard. This doctrine is applied to decrees of the Orphans Courts settling fiduciaries' accounts. Shearman v. Cameron,78 N.J. Eq. 532; Brown v. Fidelity Union Trust Co., 126 N.J. Eq. 406,433. Not only are the decrees conclusive in controversies between the accountant on the one side and the beneficiaries on the other, but also the decrees are conclusive in subsequent litigation between different classes of beneficiaries, for instance, between remaindermen and life tenant. City BankFarmers Trust Co. v. McCarter, 111 N.J. Eq. 315. The decrees ascertaining the amount of corpus held by the Roth trustees are conclusive in favor of the remaindermen, and so they have a definite vested property in the decrees. This interest would be destroyed by vacating the decrees and leaving open for further consideration the question of the amount of corpus.
It is the general rule that all parties to a decree or judgment, whose interest will be affected by opening or vacating it, should be made parties to a proceeding in which this relief is sought. 34 C.J. 344; Surety Building and Loan Association v.Risack, 118 N.J. Eq. 425. This principle extends to decrees of probate courts, including decrees on accounts, although I find no case in New Jersey in which this phase has been involved. 21C.J.S. 561; 34 C.J.S. 1125. A proceeding to open a decree is, in its effect, much like an appeal. Here again it is the rule that all parties to the record who may be affected by the reversal of a decree, should be made parties to the appeal. Powell v.Yearance, 73 N.J. Eq. 117, 124. Including appeals from decrees of the Orphans Court. In re McCabe, 125 N.J. Eq. 278.
Appellant relies on In re Slater's Estate, 88 N.J. Eq. 296,
in which Vice-Ordinary Leaming said that on a petition to the Orphans Court to open the decree for fraud or mistake, the ordinary procedure is a rule requiring the executor to show cause why the decree should not be opened. In the case before him, the Orphans Court, without any application to *Page 591 
open the decree settling a certain intermediate account, had on the executor's final accounting received and allowed exceptions to the intermediate account and had thereby increased the liability of the executor. The question whether other parties than the executor should be given notice of the application, did not enter this case or any of the cases referred to by Vice-Chancellor Leaming.
The appellant also cites Orphans Court rule 28: "In proceedings for the resettlement of the account of an executor, administrator, guardian or trustee, at least five days' notice of the intended application shall be given to all parties in interest unless the court shall otherwise order." This rule does not give the Orphans Court unlimited discretion to determine what parties shall receive notice. The rule would not, for instance, justify a failure to notify the executor in a case where the object of the proceeding is to increase his liability. The authority given by the rule must be exercised in accordance with the fundamental doctrine that a party who will be directly affected by the action of the court, must be brought in.
The Roth remaindermen were necessary parties to the proceeding to open the decrees settling the trustees' accounts. Since they were not joined, the Orphans Court properly dismissed the petition. When I announced this view of the matter to counsel, the suggestion was made that instead of remitting the record to the Orphans Court, the remaindermen be brought into the Prerogative Court on the appeal, so that there might be made here a decree on the merits. After considering with some care the nature of this court's jurisdiction, I concluded that this course might properly be pursued.
The Prerogative Court has always been regarded as an ecclesiastical court. In re Coursen, 4 N.J. Eq. 408; Harris v.Vanderveer's Ex'r, 21 N.J. Eq. 424, 434; In re Merrill, 88 N.J. Eq. 261.
The origin of the court may be found in the Seventy-fifth Article of the Instructions given to Cornbury, our first Colonial Governor, conferring on him the ecclesiastical jurisdiction over the probate of wills. 2 N.J. Arch. 529;Smith's History of New Jersey 253. By virtue of this grant, Cornbury and his successors or their delegates admitted *Page 592 
wills to probate, granted letters of administration, and settled accounts of decedent's representatives. The first Constitution of New Jersey, adopted in 1776, provided that "the governor shall be ordinary or surrogate general." Then, in 1784, the legislature passed the important statute which settled our probate courts much as they remain to this day — "An act to ascertain the power and authority of the ordinary and his surrogates, and to regulate the jurisdiction of the Prerogative Court and to establish an Orphans Court in the several counties of this state." Pat. 59.
The titles "Ordinary" and "Prerogative Court" do not appear, so far as I am aware, in the commissions issued to any of our colonial governors, or in their instructions, or in any colonial statute or ordinance. The terms, however, came into common usage in the colony long before the Revolution. The word "Ordinary" designates one who exercises ecclesiastical jurisdiction in accordance with the normal organization of the church. In most cases, the Ordinary is the Bishop and so the term is usually applied to him or to an officer exercising jurisdiction by his authority. Prerogative Court was the title of one of the courts of the Archbishop of Canterbury.
It was characteristic of ecclesiastical courts in 18th Century England that an appeal gave complete jurisdiction of the cause to the higher court and there the matter was litigated de novo. A citation brought the defendants into the appellate court and the same course of pleading was followed as if the court were sitting as a court of first instance. See Practice in the Spiritual orEcclesiastical Courts, by H. Conset (1708 ed.) 185. On an appeal from a definitive sentence, or what we would call a final decree, or from an interlocutory sentence which in result decided the whole suit, matters could be pleaded on the appeal which were not pleaded below and proofs presented which were not offered below. Conset 216. So much was the cause in the upper court treated as an original suit, that it could be instituted by one who was not a party to the cause in the lower court. Jones v.Bougett, 1 Atkyns 298; 26 E.R. 191. The question on appeal was not whether the judge below correctly decided the suit on the *Page 593 
record and proofs before him, but whether, on the pleadings and proofs in the upper court, the appellant or respondent should prevail. Conset 235.
In New Jersey, this principle of the ecclesiastical courts has been followed on appeals to the Prerogative Court at least to the extent of permitting new proofs to be presented in that court and of allowing that court to dispose finally of the matter instead of remitting the record to the Orphans Court for further proceedings there. Among the many cases in which evidence was received in the Prerogative Court, are Sayre's Adm'r v. Sayre,16 N.J. Eq. 505, on appeal from decree of distribution;Personette v. Johnson, 40 N.J. Eq. 173, sale of lands to pay debts; In re Koss, 105 N.J. Eq. 29; reversed on another point,106 N.J. Eq. 323, proceeding for discovery of assets; In re LeVan, 123 N.J. Eq. 463, decree of distribution. Cases where the Prerogative Court, having obtained jurisdiction by the appeal, retained the matter instead of remitting the record to the Orphans Court, include Trimmer's Ex'rs v. Adams, 18 N.J. Eq. 505,
on appeal from decree opening a settled account; Schaedel
v. Reibolt, 33 N.J. Eq. 534, decree on guardian's account;Hill's Case, 55 N.J. Eq. 764, appointment of administrator; Inre Cook, 95 N.J. Eq. 589, settlement of account; In re Barnett,101 N.J. Eq. 222.
In some of our decisions a distinction is drawn between a cause in which the jurisdiction of the Prerogative Court is purely appellate, and one in which the cause might have originated in that court instead of in the court below. This distinction finds no support in the English cases. The principle that the appellate court heard the cause de novo operated in full force even in the Court of Delegates, the court of last resort in ecclesiastical matters, which had no original jurisdiction at all. Temple v. Walker, 2 Hag. 394; 161 Eng. Rep. 1363.Forster v. Forster, 1 Hag. 144; 161 Eng. Rep. 504 (at p.509).
It is agreeable to the principle which I have been discussing, that new parties may be added in the Prerogative Court. This would seem to follow of course, if indeed we have jurisdictionde novo. And it does not rest only on ancient precedents, *Page 594 
but is buttressed by considerations of convenience and is a real aid to the prompt administration of justice.
The Prerogative Court is given by statute very broad power of amendment in order to prevent the failure of justice. R.S.2:30-4. On appeal, it may amend the record of the Orphans Court.Robinson v. Furman, 47 N.J. Eq. 307. A statute with similar provisions has been held to give the appellate court in a common law action, a limited power to amend as to parties. Ciardini v.McAdoo, 93 N.J. Law 138; Boniewsky v. Polish Home, c.,103 N.J. Law 323. As to adding a party on an appeal to the Common Pleas, see Harrison v. Dickerson, 87 N.J. Law 92. In general, see3 C.J.S. 238 and 3 Am. Jur. 390. See Prerogative Court rules 82 and 100 and Chancery rule 12. Accordingly, the Roth remaindermen have been brought in and the proofs have been taken.
We turn to the merits. It is entirely clear that moneys used to reduce the mortgage debt should not have been permanently deducted from income but should have been charged againstcorpus. Thomas v. Thomas, 17 N.J. Eq. 356; Burger v.Burnett, 95 N.J. Eq. 643. Yet $9,925 of income was taken from income to reduce the mortgages during the three accounting periods. We can accept the evidence for the respondents that Mrs. Sameth was aware that the rents were being used for this purpose, that she knew the reason, namely, the lack of liquid corpus, and that she made no objection. Such a diversion of income to capital purposes is by no means a rarity in the management of estates, but normally the money is restored to income as soon ascorpus funds are available. There is no evidence at all that Mrs. Sameth, or her brothers, intended that the payment of amortization out of rents should operate as a gift to the remaindermen. The correspondence shows almost conclusively that Moses Roth had no such thought. The remaindermen themselves probably knew nothing of the matter. So we come to the question which seems to me the core of the case. Did Mrs. Sameth realize that the accounts were so drawn that their allowance by the court would forever debar her from recapturing her money? If she did not and therefore let her proctor apply for the decrees, the decrees should be opened. *Page 595 
The first account of the trustees was filed in 1936. Nowhere does it show that payments had been made on account of the mortgages. The schedule entitled Expenses Chargeable to Income, does not include the amortization payments. This results from the fact that the income receipts with which the trustees charge themselves under the heading Income from real estate partnerships, are only the net amount received by the trustees, that is, one-half the rents after all expenses and the amortization had been deducted. The lands were managed, and the accounts relating thereto were kept on a partnership basis. In the income schedule of the second account, the accountants charge themselves with "payments out of income from partnership account for mortgage reduction," $3,375, and they pray allowance out of income for the same item. As an addition to corpus, the trustees also charge themselves with the amortization. The third account, for the period ending December 31st, 1942, in the same manner shows amortization payments of $4,050. All three accounts were approved by decree in the common form that the account be allowed and that there was a certain balance of corpus and a certain balance of income remaining in the hands of the accountants.
Mrs. Sameth was one of the accountants. But an application to open may be made by the party on whose motion the decree was made. Grant Inventions Co. v. Grant, c., Corp., 104 N.J. Eq. 341.
The application is addressed to the discretion of the court and is to be disposed of on equitable principles so as to do justice to all persons concerned. In re Morris Estate, 65 N.J. Eq. 699.
Mrs. Sameth had no independent counsel, but relied, as did her co-trustees, on the proctor who usually handled the estate business. The first account, as already pointed out, discloses nothing about the amortization payments; it does state truthfully that the balance of cash income on hand was zero. We would have to attribute to Mrs. Sameth considerable technical legal knowledge, were we to determine that she was aware that the usual decree on the account would cost her $2,500. The other two accounts were submitted to her for signature after she had become a bedridden invalid. Each is about 20 pages long. *Page 596 
It is hard to suppose that she examined them carefully. She testifies, "I thought everything was all right. I didn't think there was going to be any injustice done me." Mrs. Sameth's case is inherently strong in that she has been deprived of a large sum of money that unquestionably belonged to her. I am satisfied that she did not appreciate the effect of the decrees on the accounts. There will be a decree opening the accounts to the end that the amortization payments be charged against corpus. Doubtless counsel can agree on the correct figures, so that the accounts can be restated without more delay.
The remaindermen urge that on the resettlement of the accounts, a depreciation reserve be created by charging income annually with a sum equal to some reasonable percentage of the value of the buildings as at testator's death. Such a course is in harmony with modern accounting practice, but generally, as between life tenant and remaindermen, the latter must bear any loss due to depreciation and obsolescence. Mrs. Sameth cannot be required to suffer a deduction from income for the creation of a sinking fund to offset such a loss. Laflin v. Commissioner, 69 Fed. Rep.
2d 460. A tenant for life is bound to repair only to the extent of preventing permissive or actual waste. Kearney's Ex'r
v. Kearney, 17 N.J. Eq. 59 and 504. In fulfillment of this duty, it is said that he must keep the premises in as good repair as when his estate began, not excepting ordinary wear or tear. If, in the course of time, a new roof is needed, he should put it on; if paint wears off, he is bound to repaint. In re Steele,19 N.J. Eq. 120; Murch v. Smith Manufacturing Co., 47 N.J. Eq. 193.
But he is under no obligation in respect to the loss of economic value of a building which normally occurs.
About the same time that Mrs. Sameth sought relief in the Orphans Court, her co-trustee, Mr. Moses Roth, filed with the same court a petition setting forth the facts and praying for an order "instructing the said executors in the premises." The Orphans Court, on this petition, ordered: "The said executors and trustees are hereby instructed that the said Carrie X. Roth Sameth is estopped by the said accounts and decrees thereon entered April 9th, 1940, and April 20th, 1943, *Page 597 
from claiming that the said payments aggregating $7,425 on account of the principal of said mortgage encumbrance be charged against the corpus of said trust; and it is further ordered that any amortization payments made on account of the principal of said mortgage encumbrance from and after the decree settling the account of said executors and trustees on April 20th, 1943, be chargeable against the corpus of said trust and not to the income therefrom." From this order also, Mrs. Sameth appeals. The question is presented whether the statute, P.L. 1920 p. 475;R.S. 3:7-77, in so far as it may empower the Orphans Court to give such instructions, trespasses upon the exclusive jurisdiction of Chancery.
A trustee has always had a right to maintain a suit in Chancery for a judicial construction of the trust instrument, and directions as to his own conduct. 3 Pom., § 1064;Attorney-General v. Moore's Ex'rs, 18 N.J. Eq. 256; 19 N.J. Eq. 503; Kearney v. Macomb, 16 N.J. Eq. 189; Trustees of PrincetonUniversity v. Wilson, 78 N.J. Eq. 1. This is a branch of our exclusive jurisdiction over trusts. Pom., §§ 151 and 219.
Trusts and equitable interests are as foreign to ecclesiastical courts as to courts of common law. Ex parte Jenkins, 1 Bar Cros. 655; 107 E.R. 241; 4 Burn. Ecclesiastical Law (1824 ed.)500. The statute of 1784 which I have already mentioned and which established our Orphans Courts, gave them a very narrow jurisdiction in trust matters by empowering them to settle the accounts of trustees and to require them to give security in certain cases, but until the enactment of the 1920 statute, the Orphans Courts had no jurisdiction whatever to give instructions to trustees. They had no jurisdiction to direct even a guardian how to expend the income of his ward. In re Alexander, 79 N.J. Eq. 226.
The rule is entirely settled that the legislature cannot impair the jurisdiction of Chancery by giving another tribunal concurrent jurisdiction of a subject-matter which, at the time of adoption of our constitution, belonged exclusively to Chancery. Flanagan v. Plainfield, 44 N.J. Law 118; PublicService Electric Co. v. Public Utility Commission,88 N.J. Law 603. The late Vice-Chancellor Bentley applied this principle to the statute in question, In re McConnell, 105 *Page 598 N.J. Eq. 687. The Essex County Orphans Court lacked jurisdiction to instruct the Roth trustees how they should execute their trust and therefore the decree must be set aside.
The remaindermen, by counter-claim, ask this court to order the trustees to sell the building. This court, equally with the Orphans Court, lacks jurisdiction in the premises. *Page 599