In the matter of the estate of SARAH E. SLATER, deceased.

[Submitted June 11th, 1917. Determined October 17th, 1917.]

1. Where on the settlement of the final account of an executor on exceptions thereto, the court examined and opened its decree settling an intermediate account of the executor which had been duly allowed, such act was erroneous.

2. A loss made by an executor by his employment of attorneys in another state to recover a claim, for which service the attorneys charged an exorbitant fee, should not be charged against the executor where he acted honestly, and made every effort to recover the exorbitant charge.

3. Certain charges against the executor imposed by the court on settlement of his final account allowed.

4. Where the orphans court deemed the security for certain loans made by the executor inadequate, no more severe penalty than indemnity against loss should be exacted.

5. An intermediate account may be opened after it is allowed by the court on allegations of fraud or mistake.

*88 N. J. Eq.*                    In re Slater's Estate.

On appeal from a decree of the orphans court.

*Messrs. Garrison & Voorhees* and *Mr. Ulysses G. Styron,* proctors for the appellant.

*Mr. Albert S. Woodruff* and *Mr. Byron M. Seabrook,* proctors for the respondents.

LEAMING, VICE-ORDINARY.

This is an appeal by an executor from a decree of the orphans court of Atlantic county touching two certain accounts filed by him as executor of the estate of Sarah E. Slater, deceased. The first account is what is known as an intermediate account, as distinguished from a final account, and was filed by the executor November 6th, 1915, and duly noticed for settlement before the court on December 29th, 1915; on the latter date, no exceptions having been filed, the account was allowed by the court as reported and the court's decree to that effect signed and entered. The second account was a final account, and was filed July 29th, 1916, and duly reported for settlement before the court on August 30th, 1916. On the last-named date consideration of the final account was continued to September 27th, 1916, by order of the court, and on that date exceptions were filed by residuary legatees. These exceptions included objections to both the intermediate and final accounts. At the hearing the court entertained the exceptions which were directed to the intermediate account as well as those directed to the final account, and the decree of the court, based upon the testimony then heard, from which decree this appeal is taken, adjudges that in certain matters the executor has been allowed credits in the intermediate account to which he is not entitled, and that in certain other matters he should be charged with obligations with which he is not charged in the intermediate account, and also makes adjudications of like nature touching the final account, and decrees that the intermediate account be vacated, set aside and for nothing holden as to the matters referred to, and directs that the intermediate and final accounts be restated in conformity with the specific adjudications touching the several matters of charges and credits. The

decree further directs that in certain particulars the restated accounts be made more specific, and also directs that the costs on the exceptions be paid by the executor personally, including a specified counsel fee allowed to exceptants.

It is first contended by appellant that the prior decree of the orphans court allowing the intermediate account is conclusive to the same extent as a decree allowing a final account and, in consequence, the orphans court was without power to open such intermediate account at a hearing which had been designated pursuant to the statute for the sole purpose of inquiring into the accuracy of the final account. No objections are made by appellant to the orphans court having entertained the exceptions which were filed to the final account; the contention is that at the statutory hearing for the allowance of the final account the orphans court could not entertain exceptions then filed to the intermediate account which had been theretofore allowed by decree of that court.

Prior to the amendments of the Orphans Court act, which were made by the act of 1905 (*P. L. 1905 p. 299*), the proceedings of that court touching intermediate accounts of an executor were defined by section 124 of the Orphans Court act of 1898. *P. L. 1898 p. 760.* No decree allowing the account as stated was authorized, the statute merely directing that the account, in circumstances stated by the statute, should be entered of record and be given *prima facie* force as against exceptions subsequently filed, unless notice should be given at the time the accounts were passed that they would be excepted to and a memorandum of such notice entered. That section was amended by the 1905 act by excluding from its operation all intermediate accounts except those of guardians. Section 125 of the act of 1898 related to the final accounts of executors, administrators, guardians and trustees and provided for a decree for their allowance as stated. The 1905 amendment to that section made no change in it except to eliminate the word "final" as to the accounts of executors, administrators and trustees and retain that word as to the accounts of guardians. This amended section clearly authorized and contemplated a decree of the orphans court allowing an intermediate account of an executor, as stated, in the absence of exceptions

filed thereto. Section 126 of the act of 1898 related to the hearing and allowance of "final accounts" of executors, administrators, guardians and trustees when exceptions were filed to such accounts; the amendment to that section by the act of 1905 merely omitted the word "final" before the word "accounts."

It seems impossible to escape the conclusion that these amendments of the 1905 act were operative to place intermediate accounts of executors upon precisely the same plane as final accounts and contemplated a like decree touching their allowance in lieu of a mere authorization that they be entered of record. This effect of the amendments embodied in the act of 1905 is clearly stated by Judge Ten Eyck in *In re Porter Estate, 34 N. J. L. J. 314,* and is stated in like manner in *1 Koch. N. J. Prob. L. 650 et seq.*

Section 127 of the act of 1898 relates to the conclusiveness of decrees of the orphans court on the final settlement and allowance of accounts of executors, administrators, guardians and trustees. This section is as old as the court. *Pat. L. p. 59 § 17.* With intermediate accounts of executors given the same status as final accounts touching their examination by the court and controversies as to their correctness and the decree to be entered by the court touching their allowance, it seems to necessarily follow that the provisions of section 127 must be understood to be applicable to such intermediate accounts after they shall have been allowed by decree of the court. This view is adopted by Kocher (at. *p. 652*). By section 127 the decree of allowance is declared conclusive upon all parties and operative to exonerate and forever discharge an executor from all demands of creditors, legatees or others beyond the amount of such settlement, except for assets or moneys which may come to hand after settlement, and "excepting also in cases where a party applying for a resettlement shall prove some fraud or mistake therein, to the satisfaction of the said orphans court." That section appears to do little, if any, more than declare the effect of the decree to be substantially the same as it would be without such declaration. A general statement of the rule is that the judgment of a court of competent jurisdiction is conclusive upon all persons over whom it has acquired jurisdiction. But that conclusiveness does not

prevent such judgment or decree being opened in proper circumstances, and the section of the Orphans Court act last referred to clearly contemplates that this may be done as to a decree of the nature here in question by an application to the orphans court for that purpose based upon fraud or mistake, to the end that a resettlement may be had. The procedure which appears to have been almost, if not quite, uniformly adopted for that purpose is a petition to the orphans court to open the decree for fraud or mistake therein, and on the presentation of that petition a rule to show cause is issued requiring the executor to show cause why the decree should not be opened and the account resettled. See section 179 of Orphans Court act. By rule 22 of the orphans court, promulgated by the ordinary, pursuant to section 194 of the Orphans Court act, in proceedings for the resettlements of accounts, at least five days' notice of the intended application shall be given to the executor. An examination of the numerous cases appearing in our reports in which a resettlement of accounts of executors has been sought, will disclose that this procedure by petition and rule to show cause has been practically uniform from an early date. The following cases may be advantageously consulted both as to procedure and the inherent nature of the proceedings: *Runkle* v. *Gale*, 7 *N. J. Eq. 101; Culver* v. *Brown, 16 N. J. Eq. 533; Stevenson's Administrator* v. *Phillips, Executor, 21 N. J. Law 70; Johnson* v. *Eicke, 12 N. J. Law 316, 320; Hyer, Administrator,* v. *Morehouse, 20 N. J. Law 125; Morris' Case, 65 N. J. Eq. 699.* In *Koch. N. J. Prob. L. 657 et seq.,* that practice is adopted. It is operative to bring the executor before the court to answer the charges of fraud or mistake which are made the basis of the application to open the decree.

As has been stated herein, no such proceeding was taken in the case now under consideration. The final account of appellant executor was noticed for settlement pursuant to the statute. On the day noted, or at an adjourned day, residuary legatees filed exceptions to the final account and included therein exceptions to the intermediate account which had been theretofore allowed. On those exceptions the orphans court proceeded to a hearing touching the intermediate account and entered a decree directing that that account "be vacated, set aside and for nothing holden"

as to certain items and ordered the account restated so as to include those items in a manner to surcharge the executor. It thus appears that with the executor in court solely for the purpose of -proving his final account pursuant to the requirements of the statute and without having been brought in to answer an application to open the decree allowing his intermediate account or an application for the restatement of his intermediate account, the consideration of that account was taken up by the court on exceptions then filed and the decree here complained of was made. This I think was error. The office of exceptions filed at the time final accounts are set for settlement is to contest the accuracy of the accounts then appropriately brought on for settlement. A proceeding to open for fraud or mistake a decree already entered is of an inherently different nature and should, I am convinced, be based on an application for that purpose, and in such proceeding I think an executor is entitled to be brought before the court on due notice of the application and of its nature, conformably to the court rule heretofore referred to. In this view it necessarily follows that the decree of the orphans court must be reversed in so far as it affects the intermediate account. This removes from further present consideration the items of the decree from which this appeal is taken, numbered, respectively, two, three, four and five. If these or other matters covered by the intermediate accounts are in fact the product of fraud or mistake, there appears to be no obstacle to relief by appropriate proceedings to that end.

It remains to examine the other items brought under review by this appeal.

The assignment of grounds of appeal as to several of the items in the decree includes the claim that the exceptions filed to the final account did not include the matters with which the decree charged the executor. It is clearly not error for the orphans court to correct final accounts in matters in which errors are discovered, even though no exceptions are filed, for the court is by statute given the duty to decree the allowance of the accounts only if found correct in all respects (section 125), and where exceptions are filed the statutory duty imposed upon the court is to "correct any mistake or errors that may happen in the ac-

count as reported," and the court is by the statute also authorized at its own instance to examine an executor, on oath, "touching the truth and fairness of the same, or any part or item thereof." (Section 126.)

The sixth item of the decree under review charges the executor with $300. A firm of attorneys, in Baltimore, was employed by the executor to procure funds of testator which were on deposit in a bank of that city. The Baltimore attorneys took the necessary proceedings for that purpose in the Baltimore probate court and remitted the funds, less $500 which they charged for their services. The executor, believing the charge excessive, has sought to recover a part of it from the Baltimore attorneys, but without success, owing chiefly to the pecuniary irresponsibility of the Baltimore attorneys. It appears to be conceded that any amount in excess of $200 was an excessive charge by the Baltimore attorneys. The decree of the orphans court has accordingly refused to allow the executor credit for the $300 excessive charge made by the Baltimore attorneys. As those attorneys deducted their fees and thus rendered the payment by the executor involuntary, this surcharge by the orphans court was necessarily based on the negligence of the executor. That negligence, if it existed, consisted in the want of care on the part of the executor in the selection of the Baltimore attorneys and the failure to contract in advance touching their charges. The evidence clearly discloses a want of such care in the selection of the Baltimore attorneys as is often exercised, and, possibly, as should always be exercised, in like circumstances, for they were strangers to the executor and his New Jersey proctor and no inquiry was made touching their standing. But they were licensed attorneys regularly engaged in the practice of law in Baltimore, and as such were represented to the public as worthy of its confidence; and as practicing attorneys they were necessarily amenable to the courts of Maryland for their professional conduct. There is no evidence of bad faith in their employment, nor was their fee shared or agreed to be shared with either the executor or his New Jersey proctor. The failure of the executor to make inquiries touching their integrity or responsibility was an honest error of judgment, in so far as it was error. Nor is it doubted that an honest effort

has since been made by the executor to recover from these attorneys the amount of their excessive charge. In these circumstances I am unable to believe that the loss can be properly charged to the executor.

The seventh item of the decree must be affirmed. An examination of the executor's bank pass-book in which he exclusively deposited the moneys of the estate discloses aggregate deposits of $17,390.76, to which is to be added $288.81, credited by the bank for interest, making in all cash received by the executor to the amount of $17,679.57. But an examination of the accounts of the executor discloses that he has charged himself with $102.95, less than the amount shown by his bank pass-book. This is ascertained in the following manner: The inventory of the estate is composed of three classes of items—cash in banks, certain jewelry separately appraised and certain furniture and clothing also separately appraised. These three classes of items aggregated, at appraised values, $18,291.77. In the intermediate account the executor is charged with that amount as the foundation of his settlement, but the jewelry having been sold, and an excess of $614.54 over the appraised value having been realized, that amount is added in the account to the debit charge, thus making the total debit $18,906.31. The furniture and clothing were not sold but, with a watch and chain appraised at $50, were turned over to a devisee pursuant to the terms of the will and credited to the executor at their appraised value in the intermediate account. That procedure necessarily made the executor accountable for cash to the amount of the appraisement, $18,291.77, plus the excess over appraisement in the sale of jewelry, $614.54, less furniture and clothing and watch which were turned over to a legatee at appraisement, $1,602.50, or $17,303.81. That amount will be found to be the cash debit of the intermediate account. The final account charged the executor with the balance at the former accounting and added the interest which had been credited to the executor by his bank of deposit. This interest, when the account was stated, was $272.81. This makes the total cash for which the executor was charged by his accounts as stated, $17,575.62, or $102.95 less than his bank pass-book discloses that he in fact received. Sixteen dollars of the $102.95 was interest

which the bank had credited after the final account had been stated and before the day of settlement and was in no way concealed by the executor; the remaining $86.95 of the amount has not been explained.

The eighth item of the decree charges the executor with $36.14. The only error assigned in the petition of appeal touching this charge is that the exceptions which were filed did not specify the error. That objection has already been considered herein. This surcharge is based upon the fact that the executor did not pay an inheritance tax promptly and thereby lost to the estate the benefit of a discount of $36.14. I find no error in the decree in this respect. Ample funds were in hand to pay the tax promptly and save the discount; the loss to the estate arose from the neglect of the executor.

The ninth item of the decree charges the executor with $2,350, by reason of certain releases which had been executed by the executor discharging the lien of a mortgage on certain parts of mortgaged premises. I am convinced that this charge cannot · be sustained. By the second clause of the will a devise of $10,000 is made in trust for the benefit of Sarah Elizabeth Schermer, a niece of testator, with direction that the $10,-000 be invested by the executor and that he pay to the niece the interest and $250 each three months of the principal. This bequest, with the inheritance tax deducted, amounted to $9,500. That amount the executor loaned to a land company, the stock of which company was owned by the executor's attorney who was acting as proctor of this estate, and took as security a mortgage for the amount on the lots comprising the tract. This mortgage called for the payment of $250 of the principal each three months. These quarterly installments were paid by the land company from time to time, together with interest payments due on the mortgage, but not promptly, and were turned over to the devisee. There also appears to have been a parol agreement by which the executor agreed to execute releases of lots from the lien of the mortgage from time to time as such lots were sold, for which releases he was to receive certain specified amounts per lot. A number of these releases were executed by him, but no money was paid to him for the releases. At the agreed rate he would

have received the amount with which the orphans court surcharged his final account. It was the opinion of the orphans court that the value of the land was insufficient to justify a loan of $9,500, and also that no releases of lots should have been executed without payments proportionate to the amount of security released. The opinion of the orphans court that the loan was inadequately secured may have been based upon personal knowledge of the court touching the value of the land, for the testimony does not disclose inadequacy of value. The impropriety of the proctor borrowing money of the estate should not, I think, be charged to the executor; that the executor made the loan in entire good faith and in the belief that the security was adequate I entertain no doubt. No loss has been sustained by the estate, nor can it be known that loss will be sustained. With this release money paid by the executor to his successor in office it will necessarily be credited on the mortgage and such successor will be privileged to collect on the mortgage only the remaining amount due thereon; the benefits will thus fall to the mortgagor and the loss will fall to the executor with no apparent remedy over against anyone; the proctor who borrowed the money will thus be made the recipient of the benefits of the decree. I am impressed that had the orphans court deemed the security afforded by this mortgage inadequate, no requirement more severe than indemnity against loss should have been exacted. Section 140 of the Orphans Court act appears to contemplate that remedy. The testimony also discloses that the quarterly payments made upon the principal of the mortgage had reduced it approximately $3,000; the payment of the release money, which amounted to less than that sum, appears to have been thought unnecessary for that reason, the purpose having been to provide payments to the devisee of $250 on the principal every three months, together with interest on the unpaid principal, pursuant to the requirements of the will. It also appears by the testimony that the property known as the domicile property was sold to a purchaser for $4,000, and released from the lien of the mortgage by the executor; that release appears to have been included in the surcharge made by the decree. The purchaser paid but $500 in cash for the domicile property and executed a purchase-money

20

mortgage for the remaining $3,500 of the purchase price, and made improvements to the property so purchased to the amount of $700 or $1,000. That purchase-money mortgage was made to the executor. It follows that that release amounted to no more than a substitution of liens. I think the orphans court also may be said to have fallen into error in imposing upon the executor personal liability for the payment of this release money by a failure to take into account the circumstance that the item of $9,-500 constituted a testamentary trust. By the provisions of the will the executor was constituted a trustee for the beneficiary as to that amount of the estate; the mortgage here in question was obviously procured by the executor by reason of the testamentary trust and for the benefit of the *cestui que trust* named in the will, and was treated by the executor as a trust security under the will and was accordingly held by the executor in his capacity as trustee. This is manifest by the terms of the mortgage and also by credit sought in the final account of the executor for the amount of that specific security and by the absence of any allowances sought for the money already paid to the *cestui que trust*. The final account in manner stated thus rendered the executor in his capacity as trustee accountable to his *cestui que trust;* the exceptions were filed by residuary legatees who were in no way interested in the inadequacy of the security here in question unless the *cestui que trust* could thereafter enforce against the *corpus* of the estate any loss sustained by her by reason of such inadequacy. Had the effect of the allowance of the final account in the manner in which it was stated been, as I think it would have been, to discharge the executor, as executor, as to the amount of the testamentary trust and charge him in his capacity as trustee for that amount, I am unable to see that the exceptants had any interest whatever in the adequacy of the mortgage security so set apart under the trust to meet the remaining obligations of the trust. The executor had in fact invested the exact amount of money covered by the testamentary trust in behalf and for the use of his *cestui que trust* and in the specific manner directed by the will; unless the orphans court could, on its own motion, refuse to discharge the executor as executor until it should be found that the securities then held by the executor in his capacity as trustee

were at that time adequate to fully protect the *cestui que trust,* the surcharge here in question appears to be without legal support. See *Lippincott Case, 68 N. J. Eq. 578.* This independence of the offices of an executor as an executor and as a trustee is pointed out in *Pitney* v. *Everson, 42 N. J. Eq. 361* (at *p. 365*). But, in any event, I am convinced that the utmost relief which the court should have awarded, based upon inadequacy of security or impairment of security by reason of the execution of the releases, was indemnity against loss.

The tenth item of the decree should be affirmed, in so far as it requires a restatement of the final account in adequate detail; the allowance of a counsel fee to exceptants and costs against the executor personally should also be affirmed; I am unable to determine that this was an abuse of discretion upon the part of the court.

I will advise a decree in accordance with the views herein expressed. The decree should also provide that it shall not in any way be operative as a bar to any application which may be made in the future to open the intermediate account for fraud or mistake.