The subject-matter of this litigation (with the exception of the shares of stock of the Brooklyn City Railroad Company, which will be hereinafter referred to) was passed upon in this court in the case of Carrie S. Beam, sole complainant, v. Paterson SafeDeposit and Trust Company, the present defendant, by Vice-Chancellor Stevenson, whose opinion is reported in 81 N.J. Eq. 38;
and by the court of errors and appeals, on appeal from the decree advised by him (Idem. 195); and by Vice-Chancellor Howell, on final hearing, whose opinion is reported in 82 N.J. Eq. 518,
where he decided in favor of the complainant and against the defendant; and in the court of errors and appeals, where the latter decree was reversed and the bill dismissed. See83 N.J. Eq. 628.
The facts touching the litigation in the former case are fully set forth in the foregoing opinions, and need not be here repeated.
The property and interest of Mrs. Beam covered by said litigation are derived from the twelfth paragraph of the will of her mother, Sarah A. Cooke, which reads as follows:
"Twelfth. The other five equal parts I give, devise and bequeath to the Paterson Safe Deposit and Trust Company, of the City of Paterson, in trust as follows: one of such parts is to be set aside for each of my five children, the income from each part is to be paid to the child for whom it is set aside, in equal quarter yearly installments, so long as he or she shall live; and upon the death of any child the part set aside for such child is to be equally divided among the children of such child."
Passing under this paragraph (and dealing only with the securities covered by said litigation) Mrs. Carrie S. Beam was entitled to receive from the defendant, as trustee, one-fifth of the income from the following securities:
1. Three Twenty-eighth and Twenty-ninth streets Cross-town R.R., New York City, first mortgage five per cent. bonds of $1,000 each.
2. Two five per cent. mortgage bonds of the Second Avenue, New York City, R.R. Co., of $1,000 each.
3. Two hundred and twenty-five shares of the Central Park, North and East River Railway stock. *Page 143 
The three foregoing securities were dealt with in the cases above referred to.
In addition thereto, there also passed to her a one-fifth interest in two hundred shares of the Brooklyn City Railroad Company, which shares, together with the securities above mentioned, in 1915, were divided into five parts, and thereafter one part was carried in a separate account in trust for Mrs. Beam under said twelfth paragraph.
The position taken by the complainants on opening the case is that the decree in the former suit bound only Mrs. Beam as to the securities there litigated; and the remaindermen, not having been parties thereto, are not precluded from investigating with regard to the securities in the former suit; and that neither Mrs. Beam nor her children are bound in any respect by the former decree as to the Brooklyn city securities.
The position taken by the defendant, as far as the five bonds and the two hundred and twenty-five shares of stock are concerned (which were the basis of the former litigation), is that "although William B. Beam, Edward Beam and John C. Beam were not parties in the former suit, nevertheless, they had an interest in remainder, and were represented in that litigation by Carrie S. Beam, who was their predecessor in the estate." Citing Woolsey
v. Woolsey, 8 Buch. 517; Davison v. Rake, 18 Stew. 767;Dunham v. Doremus, 10 Dick. 511.
In Woolsey v. Woolsey, supra (at p. 525), Pitney, ordinary, after dealing with the rule as to proper parties, said: "It results that such contingent interests are held to be bound if the interest be represented in the litigation by a trustee, or [in some cases] by the predecessor in estate."
In Davison v. Rake, supra, several legatees instituted suit in the orphans court for their legacies, and the question presented was whether they were entitled to interest upon their legacies from one year after the death of the testator or from the admission of the will to probate. A residuary legatee, who was not a party to the suit in the orphans court, appealed to the prerogative court, and was the appellant in the *Page 144 
court of errors and appeals. It was assigned as one of the grounds of appeal that he was not a party. Mr. Justice Depue, speaking for the court of errors and appeals, on page 771, said: "On a bill filed by a general legatee for the recovery of a legacy the residuary legatee is not a necessary party," and on page 772 he said: "In suits by creditors or legatees, not involving the construction or effect of the residuary clause of the will, residuary legatees are interested, consequentially, only from the circumstance that the recovery of the debt or legacy will reduce the residue, and, under such circumstances, the executor is regarded as representative of all persons interested."
In Dunham v. Doremus, supra, Mr. Justice Dixon, in the court of errors and appeals, said (at p. 513): "The established rule of equity practice is that estates limited over to persons not in esse are represented by the living owner of the first estate of inheritance."
It seems perfectly plain that these decisions do not apply here. Under the clause above cited Mrs. Beam took a life estate, and her children took a vested remainder, subject to be opened to let in after-born children.
In the case of Miers v. Person, 92 N.J. Eq. 17, Chancellor Walker said: "When the contingency is not in the person, but in the event or time of enjoyment, the interest is vested." And inClark v. Morehous, 74 N.J. Eq. 658, where the language of the will was not as plain as the will in question, Vice-Chancellor Howell, after stating that it is a well-known rule that courts will make every intendment in favor of vesting the estate, held that the children constituted a class and took a vested remainder on the death of the testator, subject to be opened to admit after-born children of the life tenant. See, also, Aitken v.Sharp, 93 N.J. Eq. 336.
The conclusion I have reached on these authorities is that under the will of Mrs. Cooke there was a life estate given to Mrs. Beam with a vested remainder to her children, subject to be opened to admit after-born children. Upon this conclusion, the children of Mrs. Beam living at the time the prior suit was brought were necessary parties thereto. Their *Page 145 
mother did not represent them in that suit, and they are not estopped by the decree therein.
The next question propounded in this: The defendant claims that by reason of the various accounts filed by it in the orphans court of the county of Passaic and passed and allowed by that court, the decrees entered therein involved the same subject-matter as this suit, and are res judicata on all of the defendants.
There were three accounts filed from December 31st, 1905, down to April 15th, 1912, in which the trustee, in one column, gave the par value of the securities, and, in another, gave what it termed the "present value" of the securities. The bill in the former suit was filed February 7th, 1912, being prior to the filing of the last of the three accounts just referred to. No exceptions were filed to these accounts, although it plainly appeared in the bill that Mrs. Beam had knowledge of the fact that the securities mentioned in that suit had greatly depreciated in value and were not of the value given in the account.
In the fourth account, covering a period from April 15th, 1912, to April 15th, 1914, on one side the accountant gave the par value of the securities, and, on the other, the inventory value, thus substituting for the words "present value," as appeared in the three prior accounts, the words "inventory value." No exceptions were filed to this account, and it was regularly passed by the orphans court.
In the fifth account, covering a period from April 15th, 1914, to April 15th, 1915, under the head of "principal fund depreciation," it showed the inventory value, amounting, on April 15th, 1914, to $150,500, and a depreciation in the various securities amounting to $56,969.50, leaving a balance of $93,530.50. The accountant then sets out in another clause the securities and their values, which make up the total of $93,530.50. It then states as follows:
"This estate, for the benefit of the five beneficiaries therein, has, for the purpose of economy, been kept and reported to the orphans court as one account. The trustee, as of May 1st, 1915, has caused a reappraisement of the securties on *Page 146 
hand to be made at the market value as of that day, and has divided the said estate into five parts, according to the figures hereafter shown and entitled `distribution Sarah A. Cooke trust as of May 1st, 1915.'"
And in the table annexed a division is shown ratably among the five children of the testatrix, of whom Mrs. Beam is one. Exceptions were filed to this account by Mrs. Beam, and the court being of the opinion that the exceptions were not well taken, on July 30th, 1915, ordered that "said account be in all things allowed as reported, and that there is a balance of corpus
amounting to the sum of $93,530.50 remaining in the hands of said accountant to be disposed of according to law."
The exceptions were filed by Mrs. Beam, and are as follows:
"1. The account sets forth in schedule C a depreciation of $56,969.50 in certain securities, without any explanation concerning how and when said depreciation occurred. The accountant filed an intermediate account in February, 1908, one in April, 1910, and another in April, 1912, beside the present one, to which exception is herein made. Each of said accounts, except the present one, show the corpus of the estate to be worth about $151,056.58, and the decree of the court in each case so declared. None of the said accounts disclosed any depreciation, and since the accounting of 1914 there has been no material depreciation in the assets of the estate.
"2. In the formation of the trust in question the trustee violated the express provisions of said will of said testatrix in creating but one trust fund in place of five, as in said will ordered."
The prayer of the exception is that the account be disallowed as filed, and that the trustee be required to account to the beneficiaries of the estate for the full amount shown to be in the hands of said trustee by the decree dated May 14th, 1914, and that the exceptant may have other relief.
While the first exception is inartistically drawn, it pointed to the question of the good faith and reasonable discretion of the trustee in continuing the investments, thus calling on the trustee to bear the burden cast by law upon it to explain its *Page 147 
action in holding the securities which were so declining, as stated in Beam v. Paterson Safe Deposit and Trust Co., 81 N.J. Eq. 195.
Prior to this last accounting Mrs. Beam, having insisted that the accounts be kept separate according to the terms of the will, the subsequent accounts separated the fund into five parts, and the trustee thereafter accounted for the fund of Mrs. Beam separately. The first of these accounts is from January 7th, 1915, to the 15th of April, 1917. This account overlaps the last account, as that accounting was down to April 30th, 1915. However, the accountant charges itself with the amount of assets "as per appraisal on division on accounting, April 30th, 1915, $18,706.10" (which is one-fifth of the $93,530.50, which was the total fund held in trust for the five children). This account added the income from January 7th, 1915, and deducted the disbursements from February 23d 1915, all of which was regular. In this account the par value of the various securities is set forth on one side, and the appraised value on the other. To this account Mrs. Beam and her two sons, William and John, excepted, which exceptions were overruled, and an order entered, on May 24th, 1917, that the account be in all things allowed as reported.
The first exception is as follows:
"The account does not explain depreciation in the value of thecorpus."
The second exception was substantially the same as the first exception to the last account.
The prayer is "that the account be disallowed, and that the trustees be required to account to the said beneficiaries of said estate for the depreciation in the value of the share of Carrie S. Beam subsequent to the decree of April, 1914."
These latter exceptions substantially put in issue the question of the exercise of good faith and reasonable discretion.
The next account was from April 15th, 1917, to April 15th, 1919. This account, under schedule C, sets forth how the principal fund of the trust is invested, and places the par value on one side (without stating that it is par), and, on the other side, a column of figures without any caption as to *Page 148 
value. To this account exceptions were filed by Mrs. Beam, William B. Beam and John C. Beam, and a motion being made to strike from the records said exceptions on the ground that the same were vague, uncertain and scandalous, and not proper exceptions in accordance with the statute in such case made and provided, the court ordered "that said exceptions be disallowed and removed and stricken from the records of this court," and also ordered "that the account be in all things allowed as reported, and that there is a balance of corpus amounting to the sum of $18,706.10 remaining in the hands of said accountant to be disposed of according to law."
On January 15th, 1921, the trustee presented his petition to the orphans court for discharge, and on the 10th of February, 1921, the court ordered "that it be relieved and discharged from all further duties," c., "except accounting for and paying over the money or assets received by it by virtue of its said office." Thereafter the trust company filed its final account from the 15th day of April, 1919, to the 5th day of January, 1921, and, in schedule C, set forth the principal fund of said trust and how invested. On one side the figures set forth the par value, and, on the other, the "book value." To this accounting exceptions were filed by William B. Beam and John C. Beam, which were overruled in their entirety, and it was ordered "that the account be in all things allowed as reported, and that there is a balance remaining in the hands of the accountant amounting to $18,706.10 to be disposed of according to law, which balance is corpus at accountant's book value."
From the decree on this last accounting an appeal has been taken by William B. Beam to the prerogative court, and since which decree the defendant has turned over the securities to the new trustees.
The defendant also makes the point that all of the accounts approved showing the retention of the securities involved in the first suit, and the approval of each of these accounts upon due notice, was res adjudicata as to the propriety of the trustee's action in retaining the securities. Citing Re Slater's Estate,88 N.J. Eq. 296; Exton v. Zule, 1 McCart. 501; Search's Admr., v. Search's Admr., 12 C.E. Gr. 137. *Page 149 
In Re Slater's Estate, supra, Vice-Chancellor Leaming had before him a case involving two accounts, one intermediate and the other a final account. To the intermediate account no exceptions had been filed, and the account was allowed by the court as reported, and the court's decree to that effect was signed and entered. On the final account being reported for settlement, exceptions were filed which included objections to both the intermediate and final accounts. At the hearing the orphans court entertained the exceptions which were directed to the intermediate account as well as to the final account, and decreed that the intermediate account be vacated, set aside and for nothing holden, and that the intermediate and final accounts be restated in conformity with the specific adjudications touching the several matters of charge and credits. The vice-chancellor dealt with sections 124 to 127 of the Orphans Court act of 1898 (P.L. 1898 p. 760), as amended by the laws of 1905, page 299, and held that, as a result of the amendment, intermediate accounts of an executor were placed upon the same plane as final accounts, and contemplated a like decree touching their allowance in lieu of the mere authorization that they be entered of record. In the act of 1905, administrators and trustees were treated the same as executors. In the case before him, as above stated, no exceptions were filed to the intermediate account, and the court decided the case under section 125. Exceptions to the intermediate accounts in the present case having been filed, the case is within section 126, where, in general language, it deals with the settlement of the accounts of "executors, administrators, guardians and trustees." This means accounts which are to be settled, and includes the intermediate and final accounts of executors, administrators and trustees, but includes only the final account of a guardian, because that is the only account of a guardian which may be settled. Thus, when the orphans court overruled the exceptions filed to the intermediate accounts and allowed the accounts as reported under section 127, the decree of allowance "is conclusive upon all parties," and operates to exonerate and forever discharge an executor "from all demands of creditors, legatees or others, beyond the amount of such settlement * * * *Page 150 
excepting, also, in cases where a party applying for a resettlement shall prove some fraud or mistake therein, to the satisfaction of the said orphans court," and the application for resettlement, as held by Vice-Chancellor Leaming, is by petition and rule to show cause.
The notice of the settlement of the various accounts was given in accordance with the provisions of the statute. This notice operates as constructive notice to all parties interested in the estate. In contemplation of the law they are all before the court, and all entitled to except to the account and be heard before the court. The decree of the court upon final settlement and allowance of the account is conclusive upon all parties, except in special cases enumerated in the statute. Exton v.Zule, supra.
In the present case regular decrees allowing the account were entered, while the trusts for the five beneficiaries were kept in one account. On the division of the account into five parts, in 1915, all of the securities referred to in the former chancery litigation were set out, and their depreciation was shown under the title, "Cooke Trust, Principal Fund Depreciation, April 30th, 1915." Under this head was also shown the two hundred shares of Brooklyn City Railroad Company, which, for the first time, has been brought into this litigation. The total amount of the depreciation was deducted from the inventory value, showing a balance of $93,530.50, following which is a statement showing how the principal fund was invested.
In the case of Hill v. Hill, 79 N.J. Eq. 521, 539, Pitney, ordinary, said: "It is established that the jurisdiction of that court [the orphans court] over the subjects committed by the statute to its cognizance has a general jurisdiction similar to that of the chancery and prerogative courts, and that its authority over accounts of trustees under wills is as ample as that of the court of chancery." Citing cases. And on page 540, referring to the Woolsey Case (which originated in the orphans court, and passed through the prerogative court to the court of errors and appeals, in a matter of accounting), he says: "* * * and that court required the account of the executors to be restated in a manner to give effect to an *Page 151 
equitable estoppel arising out of the transaction between the executors and beneficiaries. Afterwards, an attempt being made by bill in equity to open the account as thus restated, it was held by the court of chancery, and affirmed by the court of errors and appeals [Woolsey v. Woolsey, 71 N.J. Eq. (1 Buch.) 609;72 N.J. Eq. (2 Buch.) 898], that the matter was res judicata, because of the former decision; that the orphans court had as ample jurisdiction to examine into the account and deal with it on equitable principles as was possessed by the court of chancery, and that the executors might have availed themselves in the orphans court of the matters they set up in the subsequent equity suit as ground for relief." See, also, Pyatt v. Pyatt,46 N.J. Eq. 285; Woolsey v. Woolsey, supra; Re Slater's Estate,supra.
Here the complainants could have obtained full relief in the orphans court on exceptions to the account of the trustee with respect to the securities mentioned in the former suit as well as to the Brooklyn City Railroad Company shares; and, in fact, exceptions were filed, in some instances, by Mrs. Beam, and, in others, by her sons, the remaindermen, which exceptions were overruled and no appeals were taken.
In view of the foregoing authorities, I am of opinion that the decrees of the orphans court on the settlement of all of the accounts down to the final account are res judicata, and that the same subject-matter cannot be relitigated in this court.
The final account was passed February 24th, 1921, and the bill in this cause was filed August 1st, 1921. To that account exceptions were filed, which were overruled and the account allowed as reported. From the decree there entered an appeal has been taken to the prerogative court, which court has full jurisdiction over the parties and subject-matter, therefore the questions arising on that account cannot be considered in this case.
In view of the fact that I have found that the decrees of the orphans court are res judicata, I have not deemed it necessary to consider the other evidence in this cause.
 I will advise a decree that the bill be dismissed. *Page 152