Hoboken Bank for Savings *v.* Schwoon.

---

## HOBOKEN BANK FOR SAVINGS

*v.*

HENRY SCHWOON and ARTHUR SEITZ, executor of Helena Roche.

[Decided November 2d, 1901.    Filed December 21st, 1901.]

Where one having a deposit in a bank signed a document in a book of the bank, whereby she directed that the account be placed in the name of another jointly with herself, and that either of the parties, or the survivor of them, might at any time draw any or all of the deposit, and thereafter a new pass-book was issued to her, which new book contained an indorsement to the effect that the account was a joint one between the depositor and the other, payable to either or survivor, and she placed the pass-book in the hands of a friend, and instructed her to deliver it to the other after her death, there was a complete declaration of trust in favor of the other.

---

On bill of interpleader.

The contest is over a sum of upwards of one thousand four hundred dollars standing on the books of the complainant's bank to the credit of "Helena Roche or Hy Schwoon, payable to either or survivor."

The defendant Schwoon claims under a bank-book showing the credit as above.

. The defendant Seitz claims under a will of Mrs. Roche, made on the ——— day of November, 1898, duly admitted to probate after the decease of the testatrix, which occurred on March 2d, 1900.

Mrs. Roche was a widow, without children, and had a life interest in and occupied certain living apartments in the city of Hoboken.

The defendant Schwoon was her grandnephew, who had learned the trade of a carpenter with her husband somewhere between 1870 and 1880, and for several years before testatrix's death resided with his wife and family in the city of Brooklyn.

The testatrix had, for many years prior to her death, an ordinary deposit account in the complainant's bank, and some time shortly before the 17th of April, 1899, she sent for Schwoon to come and see her, and upon his arrival on that day went with him to the complainant's banking-house with her pass-book. An examination of that book shows that at this time her name did not at all appear in the interior thereof, but was written on the outside simply "Helena Roche," with the number of the book— "No. 44522." On that day, at her request, and in the presence of Schwoon, a clerk in the bank wrote at the head of two of the three double pages of the book, which were prepared for cash entries, the words, "Helena Roche or Hy Schwoon," on the left-hand side, and stamped on the opposite side the words, "Payable to either or survivor." So that the heading read, "Helena Roche or Hy Schwoon in account with Hoboken Bank for Savings, payable to either or survivor." And at the same time added to the original endorsement on the outside of the pass-book, "Helena Roche," the words, "or Henry Schwoon."

At the same time Mrs. Roche signed a contract, partly printed and partly written, in a book kept for that purpose by the bank, as follows:

Hoboken Bank for Savings *v.* Schwoon.

"No. 44522. I, Helena Roche, hereby authorize, empower and direct The Hoboken Bank for Savings, in the City of Hoboken, to place the account now in my name on the books of said bank, in the name of Henry Schwoon, jointly with mine. And we, the said Helena Roche and Hy Schwoon, do hereby agree with each other to become and be co-partners in the ownership of said moneys, and of all accrued and accruing interest thereon, and of all moneys hereafter to be deposited to said account. And it is agreed that each and either of said parties and the survivor of them may, at any and all times, draw and receive from said bank the whole or any part of said moneys, and that each of said parties is authorized and empowered to sign their respective names of Helena Roche or Hy Schwoon to any receipt, check, draft or other voucher for the moneys so drawn."

At that time she had to her credit a little over one thousand seven hundred dollars.

She retained possession of that bank-book until the 2d of November, 1899, having in the meantime drawn about thirty dollars each month.

On the day last named—November 2d, 1899—she went with the old bank-book, which was filled with figures, and in person surrendered it to the bank, and took a new book, No. 73355, to which the balance then standing to her credit, $1,595.08, was transferred. She then drew $200 in money from which she retained $25 for her own immediate needs, and handed the balance of $175, with the bank-book, to an old and intimate friend who accompanied her to the bank—a Mrs. Rengier—with instructions to keep the money subject to her draft in such sums as she might choose, and to keep the bank-book until her death, and then deliver it to her nephew, the defendant Henry Schwoon.

That new bank-book contained the endorsement, "Helena Roche or Henry Schwoon," and the heading on the inside pages was similar to the previous one, "Helena Roche or Henry Schwoon in account with Hoboken Bank for Savings, payable to either or survivor."

Mrs. Rengier observed Mrs. Roche's directions and paid out $60 of the $175, to or for Mrs. Roche's use during her lifetime, and after her death delivered the balance to her executor, but delivered the bank-book to Schwoon.

The original bank-book, No. 44522, contains the following and no other restrictions upon the draft of money by depositors:

"All deposits and drafts must be entered, when made or drawn, in the depositor's pass-books; and deposits will be received and drafts paid only on the days and times before mentioned. * * * This institution will not be responsible to depositors for any fraud that may be practiced on them by any person presenting a depositor's book, and thereby drawing money without their knowledge or consent, although the strictest caution will at all times be used. * * * Depositors unable to come to the bank to sign their drafts, must send a regularly executed power of attorney."

The new bank-book, No. 73355, contained, in addition, the following provisions:

"Drafts for money may be made personally or by order in writing of the depositor or by power of attorney, but no person shall have the right to demand the whole or any part of his or her money without producing the pass-book in order that such payment may be entered therein, and such entry is to be evidence of the payment of the money specified. * * * Should a depositor lose his pass-book, he is required to give immediate notice thereof to the bank, and the bank shall prescribe the conditions on which a new book may be issued."

The will of the testatrix divided her estate between the daughter of Schwoon and a distant relative in Germany.

*Mr. Ralph W. Skinner,* for Seitz.

*Mr. Charles L. Carrick,* for Schwoon.

PITNEY, V. C.

Parol evidence was given as to the relation between Mrs. Roche and the defendant Schwoon, and as to her object in making the change which she did in her bank account. The evidence satisfies me that she had a strong regard for Schwoon by reason of his kinship, and by reason of his having lived in her family for several years while an apprentice to her husband..

It also satisfies me that after she had executed the will and deposited it in the hands of the executor she became dissatisfied with it and desired to destroy it and make Schwoon her sole beneficiary, and that she attempted to get possession of the will from the executor for that purpose, but failed, either by reason of misunderstanding on his part of her desire in that respect, or because she was afraid that she would offend him by demand-

ing outright that the will should be destroyed. I do not find it necessary to adopt a construction of the testimony on this subject which will attribute to the executor a willful disregard of the testatrix's desire in this respect.

Be that as it may, however, the evidence thoroughly satisfies me that she sent for Schwoon for the express pronounced purpose of having her little fortune in the savings bank placed at his disposal. She was past eighty-one years old, had suffered a slight stroke of paralysis, which rendered her locomotion somewhat laborious and difficult, and she was conscious that she had not long to live, but she retained her mental faculties without serious impairment until an apoplectic seizure, which occurred two days before her death.

Some time before that she sent her friend, Mrs. Rengier, to the bank to inquire whether the people at the bank were sure that her deposit there was in such shape that her nephew could get it after her death, and received a message from the bank that it was perfectly safe.

There is no reason to doubt that she fully understood the character of the contract which she signed in the books of the bank. Mr. Clark, the witness thereto, who was an officer of the bank, swears that he has no recollection of this particular transaction, but the making of such contracts was quite frequent, so that he witnessed a great many, and his invariable practice was to carefully explain the document to the party signing it, and he is quite sure that he did so in this case.

The mouth of Schwoon, who was present at the transaction, is closed as against the executor, but he swears that he was present, and that there was a conversation between Clark, the witness, and his aunt.

The attempt by the executor to prove that the account was put in the joint names of the aunt and nephew for convenience in drawing money for her wants in case of her disability, I think fails. The nephew lived in Brooklyn, was closely confined by his business, and it was not convenient for him to cross over to Hoboken to assist her in that respect.

The question raised is an important one, in view of the frequency of such transactions.

I dealt with one in *Skillman* v. *Wiegand, 9 Dick. Ch. Rep. 198,* where many of the authorities are collected. Those found in the English reports arise principally out of procuring government or other stock to be issued to two persons jointly, with the right of survivorship; and many cases are collected in a note by the late Mr. Stewart to the case of *Smith* v. *Speer, 7 Stew. Eq. 336.* I have found only one case in England of a joint bank account, namely, *Marshal* v. *Crutwell, L. R. 20 Eq. 328,* before Sir George Jessel, master of the rolls. The circumstances of that case were quite similar to those in *Skillman* v. *Wiegand,* and the result was the same.

I also dealt with the question in the recent unreported case of *Dennin, Administrator,* v. *Hilton* (since reported, *50 Atl. Rep. 600*), where I awarded the fund to the survivor. The evidence of the intention of the decedent to make a gift to the survivor was quite as clear and strong as in the present case; but the two cases differ in this: In *Dennin* v. *Hilton* there was no written contract signed by the original owner, such as we have here, but the bank pass-book was delivered by her in her lifetime to the survivor, and held by him at her death.

The objection to this mode of making a gift is that it is testamentary in its character, and in effect a will, and therefore void under our statute. In support of this conclusion is pointed out the circumstance that the power of disposition by the donor continues during his or her lifetime.

But this circumstance has not deterred the courts from giving effect to such arrangements. This has been done on two grounds—*first,* that a joint estate or interest is created with an express right of survivorship, which operates naturally and legally upon whatever of the fund remains unused at the death of the donor; and *second,* on the ground of a completed trust.

The authorities on this subject are *Ray* v. *Simmons, 11 R. I. 266, 15 Am. L. Reg. (N. S.) 701,* and cases cited in notes; *S. C., 23 Am. Rep. 447,* and cases cited in notes; *Howard* v. *Savings Bank, 40 Vt. 597; Gerrish* v. *New Bedford Institution for Savings, 128 Mass. 159; Martin* v. *Funk, 75 N. Y. 134,* where all the cases up to that date are collected in the arguments of the counsel and the opinion of the court.

In our own state I refer to *Green* v. *Tulane, 7 Dick. Ch. Rep. 169.* There, as here, the evidence of the debt was deposited by the donor with a third party, accompanied by a written direction signed by the donor to deliver the same to the donees at the death of the donor.. It was held, on the authorities cited, that the trust was complete.

In the present case the document signed by the donor in the books of the savings bank, the executed direction to put the account previously standing to her credit in a new account in the joint names of the donor and donee, with right of survivorship, and the delivery of the evidence of the indebtedness—the pass-book—to a third person for the donee, makes a complete declaration of trust—one which needs no aid in equity to enforce it.

The bank would have been perfectly justified in paying the amount due on the book to the donee upon presentation of the book. This was distinctly held, and I think rightly, in *Metropolitan Savings Bank* v. *Murphy, 82 Md. 314.*

I will advise a decree that the fund be paid to Schwoon. As there is no fund in the hands of the executor, it is idle to decree costs against him. The complainant will, of course, receive its costs out of the fund, unless the same have already been paid.