This is an appeal from a decree of the orphans court of Essex county and involves the ownership of certain stock of the Standard Oil Company of New York. The question before the court is not the propriety of that decree in view of the case as there presented. The hearing here may be de novo. Rusling v.Rusling, 36 N.J. Eq. 603; Smith v. Smith, 48 N.J. Eq. 566.
The matter was fully tried in this court with little regard to the evidence presented below, as is permissible under our practice, due application to that end having been made and sufficient reasons appearing therefor. Personette v. Johnson,40 N.J. Eq. 173; White v. Starr, 47 N.J. Eq. 244.
The decedent, Gertrude Koss, was an employe of the Standard Oil Company of New York and remained in the employ *Page 30 
of that company until her death on June 17th, 1927, although she was on sick leave for two or three months immediately preceding her death.
In November, 1923, that company inaugurated a "stock purchase plan for the employes of Standard Oil Company of New York." The details of this plan are set forth in a book-let issued by the company and offered as an exhibit in this cause and are as follows:
 "STOCK PURCHASE PLAN FOR THE EMPLOYES OF STANDARD OIL COMPANY OF NEW YORK.
"Purposes. The purposes of the plan are to enable employes of the company to become stockholders therein on favorable terms and to assist them in paying for their stock.
"Employes' Participation. Subject to the limitations prescribed in this plan, every employe [including officers and directors] who at the time of subscribing has been continuously in the service of the company and/or of any of its subsidiary companies, one year or more immediately prior thereto, may become a participant in this plan by authorizing the company to deduct from the amount due him as current compensation for services, each pay day, whether monthly or otherwise, a sum not to exceed twenty per cent. thereof, and credit the same to the account of such employe with the trustees herein provided for, to be used for the purposes of this plan, which deduction and credit shall thereupon be made by the company.
"Company's Participation. Concurrently with the making of any such deduction the company shall, out of its own moneys, credit the account of such employe with said trustees, for the purpose of this plan, but subject to the conditions hereinafter provided, a further sum equal to fifty per cent. of such deduction.
"The Trustees. This plan shall be administered by three trustees to be appointed by the board of directors of the company, and said board shall have the right to fill vacancies caused by resignation or otherwise and the further right of removal and substitution. Said trustees may act through any one of their number and shall have charge of the administration of the funds so credited and shall hold all stock of the company acquired under this plan for the benefit of participating employes during the continuance of the plan and in accordance therewith.
"The trustees shall not be held personally responsible except for their willful misconduct or gross neglect and shall not be required to give bond, nor shall they receive any compensation for their services as trustees.
"Price of Stock. The price of such stock to be so sold by the company and issued by said trustees for said participating employes shall be fixed by the board of directors, first, as of the day on which the *Page 31 
plan shall become operative, and quarterly thereafter as of the first day of January, April, July and October of each year, as substantially the average market price of the stock during the previous quarter, but shall in no case be below the par value of the stock, and the price so fixed shall be the price at which said stock shall be sold and issued to said trustees until the first day of the succeeding quarter.
"All stock sold to employes under this plan shall be purchased from the company, provided, however, that if the average market price of the stock for any quarter shall have been less than par, the trustees may during the succeeding quarter fulfill the requirements of the trust by purchasing for employes under this plan stock of the company in the open market out of the funds credited to said employes, but only so far as the same can be obtained at less than par.
"Investment of Funds. There shall be kept a separate account for each participating employe and when the amounts credited under this plan to any employe are equivalent to the value of one or more whole shares of the company's stock at the price fixed as herein provided, the company will issue to said trustees such share or shares of its capital stock and will debit the employe's account with the trustees and reduce the amount of cash credited to the employe in said account accordingly.
"Dividends and Stock Rights. Cash dividends or dividends equivalent to cash declared on stock held by the trustees shall be credited to the account of each employe for the acquiring of stock hereunder. Any stock dividend, so-called, declared on stock held by trustees shall be issued to the trustees and held for and delivered by them to the employe with the stock purchased for said employe under this plan and without further payment therefor. If during the life of this plan the company shall offer any subscription rights to its stockholders, each participating employe shall have the right to subscribe through said trustees for the shares of stock for which such employe would be entitled to subscribe if such employe were the owner of the shares of stock held by the trustees for such employe, upon paying to the trustees the subscription price therefor in which case the trustees shall subscribe and pay for said stock; provided, however, that if at said time there is a cash credit in the account of such employe with the trustees, such credit or any part thereof, at the request of such employe, shall be applied to the payment for said stock, and the cash payment required from the employe reduced accordingly. Such additional stock shall be issued to the trustees and held by them and delivered when the stock purchased for such employe is delivered to said employe. Unless the employe elects to subscribe and pays for said stock, as above provided, the subscription rights shall be sold by the trustees and the proceeds of the sale added to the other credits of the employe for acquiring stock hereunder. No fractional share of stock shall be issued and in case the employe shall become entitled to such fractional share through a stock dividend, or otherwise, the trustees shall dispose of the same, and add the proceeds to the credit of such employe for the purchase of stock hereunder. *Page 32 
 "Effective Date and Termination of Plan. The operation of the plan shall begin November 1st, 1923, and continue to October 31st, 1928, both dates inclusive, unless sooner terminated by the board of directors, who shall have the right to terminate this plan at any time. Except as hereinafter provided, no employe shall be entitled to receive stock, or other securities, or cash from the trustees before the termination of the plan, but upon such termination the accounts shall be closed by the distribution to each participating employe of all of the stock, securities and cash to the credit of such employe in said accounts.
"Withdrawals. (A) Any participating employe who remains in the service of the company, or of a subsidiary company, may, if he so elects, withdraw from the plan at any time and shall thereupon be entitled to receive only the amount of money deducted from his compensation with interest thereon at the rate of six per cent. per annum, and shall thereupon forfeit all rights and interest in this plan and in all stock, securities and credits of every kind appearing in the account of such employe with the trustees, and said stock, securities and credits shall be transferred to the company. Such withdrawing employes shall not be eligible again to participate in the plan for a period of one year.
"(B) Any participating employe who leaves the service of the company, or of a subsidiary company, voluntarily, or is discharged for cause, as to either of which in case of dispute the board of directors shall be the sole judges, shall thereupon cease to be a participant in the plan and the account of such employe shall be closed by returning to such employe only the amounts deducted from the compensation of the employe with interest at the rate of six per cent. per annum. Such employe shall thereupon cease to have any rights or interest in this plan or in any stock, securities or credits appearing in the account of such employe with the trustees, and all such stock, securities and credits shall thereupon be transferred to the company.
"(C) Any participating employe who is retired under the company's annuity plan, or whose employment is terminated by the company through no fault of his own, as to which in case of dispute the board of directors shall be sole judges, shall cease to be a participant in the plan and shall thereupon receive the full amount of cash, stock and other securities standing to the credit of such employe in the account of such employe with the trustees.
"(D) In case of the death of any participating employe while in the service of the company, or of any subsidiary company, the trust in respect to such employe shall then terminate, and thereupon the full amount of cash, stock and other securities standing to the credit of such employe in the account of such employe with the trustees, shall be paid, transferred and delivered to such beneficiary or beneficiaries as such employe may have designated in writing and cause to be filed with the company, or failing such designation to the estate of such employe.
"Title to Stock. All stock purchased or acquired by the trustees under this plan shall be issued in the name of the trustees and their *Page 33 
successors as `Trustees under the Stock Purchase Plan for Employes of the Standard Oil Company of New York,' and the trustees for the time being and the survivor or survivors of them or their successor or successors shall have the title to such stock, and have the right to vote the same at all meetings of stockholders, either in person or by proxy, and to exercise all other rights incident to the ownership thereof. Stock purchased or acquired for any employe shall be credited on the books of the trustees to such employes when purchased or acquired, but the rights and interest of any employe in said stock and in other securities and cash credited to the account of such employe with the trustees shall be only as herein declared.
"Non-assignability. The employe's rights under this plan are wholly personal, and no assignment or transfer of an employe's rights and interest in said plan or in the stock, securities or cash credited to the account of such employe will be permitted or recognized.
"Board of Directors May Formulate Details, Add to, or Changethe Provisions Hereof. The board of directors shall have the power to formulate additional details and regulations for carrying out this plan, and add additional restrictions and conditions thereto, and make such changes therein as, from time to time, they may deem proper, but no additions or changes inconsistent with the provisions hereof as to the consideration for which such stock may be issued, the extent of the participation of the employes and the amount of the contributions to be made by the company, shall be made."
The decedent became a participant in this plan and upon a form furnished by the company for that purpose designated as her beneficiary in the event of her death, her sister, Bessie Koss (Klein), who is the appellant here. The pertinent language of that form is as follows:
"To the Standard Oil Company of New York, the trustee under the stock purchase plan for employes of said company —
"In the event of my death while a participant in the stock purchase plan for employes of Standard Oil Company of New York, I hereby designate as my beneficiary [name of beneficiary]. I reserve the right to change from time to time the beneficiary named herein by giving proper notice in writing."
At the time of the death of Gertrude Koss she was entitled under this plan to thirty-two shares of stock having a value of $1,084.50 and uninvested cash amounting to $21.80, and pursuant to the provisions of the plan this stock and cash were delivered by the Standard Oil Company to the appellant. The administratrix of the decedent's estate claimed the stock *Page 34 
for the estate and on her petition for discovery of assets the Essex county orphans court ordered its delivery to her, that court holding that the "withdrawal" was under clause "C" of the stock purchase plan. Without discussing in detail the evidence submitted on this appeal, much of which was not before the orphans court, I consider it my duty to hold that the withdrawal was under the provisions of section "D" and not under section "C," and I so announced in open court, and if this were the only question involved I should feel obliged to advise a decree reversing the order of the orphans court from which this appeal is taken.
But a more serious question is involved, and that is whether or not the attempted disposition of the fund here involved was a testamentary one, and, in the form attempted, contravenes the statute of wills. That it is in violation of that statute is the contention of the respondent, while on the other hand it is contended for appellant that the attempted gift may be maintained either as a gift inter vivos or as a completed trust. The respondent contends that it is evident that there was no donative intent of a then present gift on the part of the donor at the time she named the appellant as her beneficiary, because the gift was to take effect only at the donor's death and that it was, therefore, testamentary in character; that there was no delivery on the subject of the gift and the donor did not strip herself of dominion over the property during her lifetime.
This plan became effective on November 1st, 1923, and was to continue until October 31st, 1928, unless sooner terminated by the board of directors of the company to whom alone was reserved this right of termination. There were four classes of withdrawals from the plan — (A), (B), (C) and (D), as already recited.
It is to be noted that "the employe's rights under this planare wholly personal" and not assignable. There could, therefore, have been no gift inter vivos. To establish a gift intervivos there must be — first, donative intent; second, actual delivery, except where the gift is of a chose in action; and *Page 35 
third, the donor must divest himself of all ownership and dominion. Bailey v. Orange Memorial Hospital, 102 Atl. Rep. 7;Stevenson v. Earl, 65 N.J. Eq. 721; Meyers v. Meyers, 99 N.J. Eq. 560; Mullen v. Mullins, 130 Atl. Rep. 628. In Crane v.I. Seymour Crane, Inc., 100 N.J. Eq. 402, Vice-Chancellor Backes said:
"There was no donative intent of a present gift of the shares in the company. It was to take effect as such at donor's death and was testamentary in character. * * * And the donor did not strip himself of the ownership and dominion of the shares. He obviously had no intention to presently hand the company over to his family."
This language is peculiarly applicable to the case at bar. Here there is not the slightest evidence of a donative intent of a present gift. The decedent's purpose when she became a participant in the plan was that she was to receive those shares herself at the end of the five-year trust period and in the meantime she retained in herself the power of withdrawal; but she had no power of present assignment. During her lifetime she retained entire control. In designating a beneficiary the decedent merely provided for the disposition of the stock on her death providing that event occurred before the end of the five-year period. If it did not occur within that period the fund would be received by the decedent. In his brief, counsel for appellant now disclaims any contention that there was a giftinter vivos, as obviously there was not.
It is argued, however, that the plan is similar to that of an insurance policy, but the only analogy to such policy is the naming of a beneficiary and the power to change that beneficiary during the period of participation in the plan, and the Standard Oil Company is not an insurance company nor can it be seriously contended that this plan was in any sense a plan of insurance.
Counsel for appellant strongly urges that the situation here disclosed is that of a trust completely created by the decedent for the benefit of the appellant; in other words, that there is an executed trust. Under the provisions of the plan the company *Page 36 
deducted a certain sum each week from the decedent's salary and deposited it with the trustee. To this amount the company added fifty per cent. of the salary deduction and the total sum thus accumulated was from time to time invested, as the amount warranted, in stock of the company which the trustee then held under the terms of the plan. The legal title to the stock was in the trustee. It is contended that the decedent had no present rights in the stock except upon withdrawal under sections A and B, in which event she would receive only the cash deducted from her salary with interest but not any of the company's contributions; that this indicated a complete transfer of title to the trustee, and that the reservation of the right to withdraw and to change the beneficiary did not invalidate the trust, as a reservation of a power of revocation is not destructive of a trust already completely established. It is contended that thecestuis que trustent under this plan were the donor (the decedent) and the appellant, or their survivor, and that the appellant is entitled to the stock as the survivor of thecestuis, and that in this respect the case at bar resembles the joint bank account cases of which Hoboken Bank for Savings v.Schwoon, 62 N.J. Eq. 503, is an example; but respondent contends that the stock was for the benefit of the employes only; that is, for the decedent, and that by the naming of the appellant as beneficiary no joint interest or estate in the fund was created and distinguishes it from the joint bank accounts, because in those cases there is a present interest established in the account when the joint account is opened, and argues that no present joint interest could be created here because of the non-assignability clause. And to the argument that the trust is a completed one, respondent argues that there was no intent by decedent to divest herself of her equitable interest in the stock.
I think all these contentions must be resolved in favor of the respondent. This case is clearly distinguishable from Kauffman
v. Edwards, 92 N.J. Eq. 554; Hoboken Bank v. Schwoon, supra, and also from Green v. Tulane, 52 N.J. Eq. *Page 37 169. It is more nearly akin in principle to Stevenson v.Earl, 65 N.J. Eq. 721, where it was held that where the agreement between donor and depositary is that the donor has complete right of ownership and control during her life, and that so much as is remaining at her death shall be delivered to donee who shall then become the owner thereof, such a disposition is a testamentary one and invalid. In Kaufman v. Edwards, Vice-Chancellor Buchanan very clearly distinguishes between the act of a donor which "is a presently effective transfer of an interest" and a transfer which is to become effective only upon the death of the donor. In the instant case the non-assignability of the fund is significant. In Green v. Tulane, supra, there was a complete transfer of the property with a reservation of income only; here the transfer to the trustees was only for a term of years with power of withdrawal and right to change the beneficiary reserved. The beneficiary was to become entitled to no interest in the fund except upon the death of the donor within a certain period. The language of the form designating the beneficiary is significant and controlling. It is "in the event of my death while a participant," c. Then and then only was the gift to take effect, and it seems to me that the conclusion that this was an attempted testamentary disposition, invalid under our statute of wills, is inescapable. The decree of the Essex county orphans court will therefore be affirmed. *Page 38